### Ralph Marshall v. The State.

#### No. 5176.  Decided November 6, 1918.

**1.—Murder—Manslaughter—Uncommunicated Threats.**

Where, upon trial of murder and a conviction of manslaughter, the facts raised the issue as to who began the difficulty, the defendant had the legal right to introduce testimony as to uncommunicated threats by the deceased, and a refusal by the court to permit him to do so is error.

**2.—Same—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the court assumed that the defendant went to the place of the homicide for the purpose of provoking a difficulty and the specific purpose and intent of killing the deceased, the same was a charge upon the weight of the evidence, and reversible error.

**3.—Same—Charge of Court—Unwarranted Assumption.**

Where, upon trial of murder and a conviction of manslaughter, there was no evidence that the defendant intended to whip the deceased, or that he had any reason to anticipate the matter with reference to a female, about which there arose a controversy, the assumption of these facts in the court's charge was reversible error.

Appeal from the District Court of Cooke.  Tried below before the Hon. John Speer.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Culp & Culp,* for appellant.—On question of uncommunicated threats: McMillan v. State, 58 Texas Crim. Rep., 525; Howe v. State, 77 id., 108; Bankston v. State, 76 id., 504; Kirklin v. State, 73 id., 251; Harper v. State, 75 Texas Crim. Rep., 124, 170 S. W. Rep., 721; Carrell v. State, 204 S. W. Rep., 334; Torrez v. State, 204 S. W. Rep., 228.

Upon question of court's charge: Bradford v. State, 25 Texas Crim. App., 723; Dobbs v. State, 51 Texas Crim. Rep., 113, 100 S. W. Rep., 946; Kellog v. State, 58 Texas Crim. Rep., 84, 124 S. W. Rep., 958.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter, his punishment. being assessed at two years confinement in the penitentiary.

He had rented land from the deceased, and had prepared most of it for planting purposes. One or more acres of the land had not been plowed. Deceased hitched his team and went down and began plowing this land. Appellant went where he was to inquire the reason for such action. During the conversation deceased notified appellant that he was going to take the land, leaving the impression on appellant's mind that he would have to leave the place, and that his rental contract would be cancelled. After conversing with reference to this matter deceased stated to appellant that he, appellant, tried to induce deceased's daughter Ruby to run off and marry a young man named Johnson. This appellant denied. From this point on the facts diverge. Appellant's testimony was to the effect that deceased called him a liar, and made a demonstration as if to get his pistol, which he carried under his left arm, and had drawn the pistol sufficiently far for appellant to see it when he drew his and fired, and continued to fire. The deceased did not fire his pistol. The State's view of this matter was when the matter arose with reference to appellant trying to induce the daughter of deceased to run off with Johnson, appellant used some pretty vigorous language, some of it verging on the point of indecency; that he then knocked deceased down with his fist, and drew his pistol and shot him while lying on the ground. There was no question that deceased was armed. His two sons, who were eyewitnesses, so state, and it was a conceded fact that deceased always went armed. It is also not a controverted fact that deceased after the shooting went to his house, a short distance, and carried his pistol in his hand. These facts suggested the issues of murder, manslaughter and self-defense. The court submitted these issues, and the jury convicted of manslaughter.

Appellant's contention was that the facts also raised the issue as to who began the difficulty, and in this connection insisted that he had a legal right to prove uncommunicated threats by deceased. The court excluded this testimony for reasons stated in the bill of exceptions.

Without discussing this, or the qualification of the bill, upon another trial this testimony should be admitted. The authorities are so uniform and numerous that it is deemed unnecessary to cite them.

The court charged the jury in the following language: "If the defendant went to the scene of the difficulty with the specific intent of provoking a difficulty with the deceased, or produced a provocation for the killing of said G. M. Lynch he would lose his right of self-defense if at the time of the killing he had done some act carrying out such intent, if any, and it became necessary for him to shoot the said G. M. Lynch in order to defend himself against bodily harm, the defendant would be guilty of murder. But if you find from the evidence that the defendant went to the scene of the difficulty with the specific intent to whip, or otherwise inflict an injury on the deceased less than that of death, and if at the time of the shooting he was then doing some act carrying out such intent, and it became necessary for him to kill the said G. M. Lynch in order to defend himself, the killing would be manslaughter."

Proper exceptions were reserved to this charge, and special requested instructions refused. This is a charge upon the weight of the evidence, and assumes a proposition adverse to appellant. Appellant did go to the scene of the homicide to talk with deceased with reference to his acts in regard to the land and the purposes of the deceased. The deceased substantially informed him that he was going to take the land and plant it. As we understand the record his statement was to the effect that the rental contract would be ignored. When this conversation ended, then the conversation came up with reference to deceased's daughter, as stated above. It is true, appellant was armed when he went to deceased. Appellant states he knew the dangerous character of deceased, and all the evidence shows he was a dangerous man, and continually went armed, and for this reason appellant carried his pistol; that he did not know what the deceased would do in view of the situation, and in case deceased raised trouble with him he would be able to defend himself. Under the State's view of the case appellant stated to deceased, when charged with trying to induce his daughter to run away with Johnson, that he was a liar and a son-of-a-bitch, and then deceased reached for his pistol. Appellant's theory was that when he went to deceased and the accusation was brought with reference to the girl he denied it, and said he made no such statement, and that he did not believe his daughter so informed him, and deceased applied an epithet and liar to appellant, and he struck him with his fist and knocked him down, but before knocking him down deceased reached for his pistol and was pulling it. Under these circumstances the court was not authorized to assume as a fact and predicate a charge upon the assumption that appellant went to the place for the purpose of provoking a difficulty, or for the specific purpose and intent of killing deceased. This was assuming a fact adversely to appellant, and so informing the jury.

The quoted charge is also criticised because the court made it the basis of a manslaughter conviction, that if defendant went to the scene of the difficulty for the specific intent to whip or to inflict injury upon deceased less than death, it would be manslaughter. There is no evidence, as we understand this record, indicating defendant intended to whip deceased. The evidence is that when deceased called him a liar appellant knocked him down with his fist. The whole difficulty seems to have culminated in the conversation with reference to the girl and the language following between the parties. There is nothing to indicate that appellant anticipated, or had any reason to anticipate, the matter with reference to the girl would come between them. This is an assumption of a fact, made the basis of a conviction for manslaughter, which was unwarranted by the facts. The charge was not 'ustified nor permissible under the conditions of this record.

For the reasons indicated this judgment will be reversed and the cause remanded.

*Reversed and remanded.*