### MELVIN WATT v. THE STATE.

#### No. 6551. Decided December 21, 1921.

**1.—Murder—Manslaughter—Evidence—Cross-Examination—Uncommunicated Threat.**

Where, upon trial of murder and a conviction of manslaughter, testimony that deceased insulted defendant's wife was introduced, etc., and the wife of deceased testified for the State, a refusal to permit the defendant on cross-examination to ask her the following question: "When you spoke to your husband about what your sister had told you, what did he say to you?" was reversible error, because the answer would have been an uncommunicated threat; and the evidence in the instant case developed such controversy as to who was the agressor as to render it improper to exclude this testimony.

**2.—Same—Evidence—Self-Serving Declaration—Rule Stated.**

Testimony that appellant approached the sheriff and city marshal and requested them to arrest the deceased on account of his conduct toward defendant's wife, and his threats against the life of defendant, was inadmissible, the court having admitted testimony to show that he had sought and found

these parties, but excluded the declaration. This under the rule is a self-serving declaration, and did not come under the exceptions to the rule.

### 3.—Same—Grand Jury Testimony—Husband and Wife—Impeaching Witness.

Where the bill of exceptions showed that defendant's wife was brought before the grand jury under process by the State, and there interrogated concerning the homicide, the State could not impeach her by showing that her description of the homicide on the trial did not coincide with her description thereof before the grand jury, as her testimony was not available to the State. Following Doggett v. State, 86 Texas Crim. Rep., 98, and other cases.

Appeal from the District Court of Gregg. Tried below before the Honorable Charles L. Brachfield.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. M. Bramlette,* and *Riley Strickland,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The indictment was for murder; conviction for manslaughter.

The deceased, Prentice Floyd, and the appellant married sisters.

According to the testimony of appellant's wife, the deceased, a short time before the homicide, insulted and assaulted her. On the occasion of the homicide, the deceased was standing near the street on the railroad dump, and when the appellant, in company with his wife and several other women, going in the direction of appellant's home, reached the point in the road opposite the deceased, the homicide took place.

The evidence touching the incidents of the encounter is conflicting. Three shots were fired by the appellant, taking effect upon the deceased and apparently striking him in his hands and in his breast or side.

The appellant testified that the meeting of the deceased was unexpected; that he saw him near the road with a knife in his hand, whittling; and spoke to him, telling him that he heard that he had gone to his house and torn the clothes off of appellant's wife; that the deceased at first denied this but immediately after admitted that he had done so, and with an oath said: "You can't help it," starting at the same time toward the appellant with an open knife in his hand, declaring that he would cut his throat, and that the shots were fired as he advanced.

Appellant's wife, who was present, gave substantially the same testimony. Appellant had been informed by another witness that the deceased had threatened to take his life; and evidence was introduced to the effect that the deceased bore the reputation of a violent and dangerous man.

Several eyewitnesses for the State described the encounter, all of them declaring that before the shots were fired, some words were

spoken by the appellant to the deceased, though none of them were able to repeat the language. These witnesses were in practical agreement that before the shots were fired, the deceased changed his position and came toward the point where the appellant stood. Some of them declared that the deceased had a knife in his hand but are not in harmony as to whether it was open or not, and claimed that no demonstration was made by the deceased to use it prior to the shooting.

The deceased and his wife had separated. She was used as a witness by the State. Appellant, on cross-examination, asked her the following question: "When you spoke to your husband about what your sister had told you, what did he say to you?" Her reply was excluded upon objection by the State that the question was framed so as to elicit hearsay and irrelevant and immaterial testimony. She would have testified that the deceased became angry and said: "I am tired of fooling with you damned negroes, and I am going to kill you. I am going to shoot up your house tonight and Melvin's too." In qualifying the bill, the trial judge said that he did not understand that she would have testified to threats, and that the effort was to have her detail the statement of the deceased with reference to the assault upon her sister. The question was not as pointed as it might have been in directing the mind of the court and the witness to the information desired, but appellant's counsel, as shown by the bill, at the time attempted to state to the court what testimony he expected to elicit and to explain its relevancy; that upon the refusal of the court to hear his statement, he requested that the jury be retired in order that he might develop in the presence of the court, in the absence of the jury, the facts which he expected to elicit so that the court might intelligently pass upon the admissibility of the proffered testimony and so that the appellant, if it was excluded, might have the benefit of the examination in preparing his bill of exceptions. This was declined by the court, but he said that he would allow a complete bill of exceptions, and this was done, and therein is embodied the uncommunicated threat which we have quoted above. Under the circumstances, we think the question as to the admissibility of the testimony excluded is properly before this court.

On the subject of uncommunicated threats, we quote from Wharton's Crim. Evidence, 10th Edition, Vol. 2, Sec. 757, this:

". . . if the question is as to which party is the assailant, then it is admissible to prove by the prior declarations of either, that the attack was one he intended to make. Threats to this effect by the defendant are always, as has been seen, admissible; and it is properly held that there is equal reason, supposing a collision between the deceased and the defendant to be first proved, for the admission of such threats by the deceased."

This principle obtains in this State. Pitts v. State, 29 Texas Crim. App., 380. See, also, Stewart v. State, 36 Texas Crim. Rep., 130, from which we quote:

90 T. C.—29

"We understand the rule to be that wherever the evidence leaves the question doubtful as to who began the difficulty or made the first hostile demonstration that evidence of uncommunicated threats made by the deceased is relevant as evidence, as showing who was most likely to have begun the difficulty."

See, also, Horbach v. State, 43 Texas Rep., 242; Bolin v. State, 83 Texas Crim. Rep., 590; Marshall v. State, 84 Texas Crim. Rep., 201, 206 S. W. Rep., 356; Kirklin v. State, 73 Texas Crim. Rep., 251, 164 S. W. Rep., 1018.

Without reviewing all of it, we express the opinion that in the instant case the evidence developed such a controversy as to who was the aggressor as rendered it improper to exclude from the jury the evidence which was rejected, as shown by the bill of exceptions.

After learning from his wife of the assault upon her by the deceased, appellant approached the sheriff and the city marshal, and on the trial he sought to prove that he had requested the sheriff to arrest the deceased on account of his conduct towards appellant's wife and his threats against the life of the appellant; that this occurred on the day preceding the homicide. The court admitted the testimony to show that he had sought and found these parties but his declarations to them were excluded. As the record is presented, we are of the opinion that the court was not in error. Apparently, the action was justified under the rule excluding self-serving declarations. There are exceptions to this rule, notably when an act of the accused on trial for homicide is put in evidence by the State to support an inference of malice, his declarations at the time explanatory of his conduct or which tend to rebut the State's theory growing out of his conduct are properly received. This and other illustrations will be found in Jackson v. State, 55 Texas Crim. Rep., 79; Ward v. State, 78 Texas Crim. Rep., 121; Everett v. State, 30 Texas Crim. Rep., 682; Schauer v. State, 60 S. W. Rep., 249; Butler v. State, 33 Texas Crim. Rep., 232. The facts before us do not, in our judgment, bring the proffered testimony within the exception. Analogous facts were before the court in Medford's case, 86 Texas Crim. Rep., 240, and the discussion there made we regard as pertinent here. See, also, Hutchinson v. State, 58 Texas Crim. Rep., 228; Hardeman v. State, 61 Texas Crim. Rep., 111; Atkinson v. State, 34 Texas Crim. Rep., 424, 30 S. W. Rep., 1065.

The bill complaining of the inquiry concerning the testimony of the wife of appellant before the grand jury is not sufficiently specific to reveal any injury done to the appellant. The bill states, however, that his wife was brought before the grand jury under process by the State and there interrogated concerning the homicide. The State made an effort to impeach her by showing that her description of the homicide on the trial did not coincide with her description thereof before the grand jury. Her testimony before the grand jury was not available to the State, for this purpose under the circumstances stated. Doggett v. State, 86 Texas Crim. Rep., 98; Woodall v. State, 58 Texas Crim.

Rep., 513; Turner v. State, 89 Texas Crim. Rep., 615, 232 S. W. Rep., 801.

Because of the error pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*