## J. B. CALVIN V. THE STATE.

No. 7935.   Decided April 9, 1924.

Rehearing denied may 14, 1924.

### 1.—Manufacturing Intoxicating Liquor—Declarations of Co-Conspirators.

Where, upon trial of unlawfully manufacturing intoxicating liquor, the testimony of the State's witnesses, etc., was that all the parties mentioned were engaged in the unlawful manufacture of intoxicating liquor, and it appeared from their conversation that they had formed a conspiracy to resist arrest and had provided themselves with arms, and they did resist arrest, and shots were fired, their acts and declarations were admissible in evidence,. Following: Richards v. State, 53 Texas Crim. Rep., 400, and other cases. The testimony was also admissible as res gestae.

### 2.—Same—Evidence—Location of Wounds—Harmless Error.

Although testimony with reference to the location of the wounds on one of the parties was excluded and might have been res gestae but the exclusion was harmless under the facts of the instant case, there is no reversible error.

### 3.—Same—Evidence—Declarations of Defendant.

Where the declarations of one of the co-conspirators before leaving home could be more accurately classified as hearsay, there was no error in excluding the same. Following: Medford v. State, 86 Texas Crim. Rep., 239.

### 4.—Same—Experimental Testimony.

The rejection of the testimony of the witness Shaw concerning the experiment made by him after the transaction, in order to demonstrate that the officers could not have identified the appellant and his companions was not reversible error.

### 5.—Same—Evidence—General Reputation.

Where the rejection of testimony as to the good reputation of the appellant for truth and veracity on cross-examination was harmless, there was no reversible error.

### 6.—Same—Rehearing—Conspiracy—Res Gestae.

Where it was shown that what was done by one of the conspirators and also by the officers who began shooting at the co-conspirator when he offered to shoot at them was part of the res gestae, there was no error.

### 7.—Same—Location of Wounds.

The court cannot see how the location of the wounds on one of the parties could have possibly affected the issue as to the guilt or innocence of the appellant in the matter of manufacturing intoxicating liquor, and there was no reversible error in rejecting same.

### 8.—Same—Experimental Testimony.

Where none of the parties present at the time were at the place on the night in question, and it appears manifest that they could not meet the requirements laid down for the receipt of experimental testimony and

97 'T. C.—17.

could not show that the experiment was made under the same or similar circumstances which surrounded the actual occurrence, there was no error in excluding same.

Appeal from the Criminal District Court of Tarrant. Tried below before the Hon. Geo. E. Hosey.

Appeal from a conviction of unlawfully manufacturing intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Moore & Parker*, for appellant.—On question of declarations of co-conspirators: Fox v. State, 8 Texas Crim. App., 254; Blain v. State, 26 S. W. Rep., 63; Hays v. State, 236 id., 464; Newsome v. State, 249 id., 478; Richards v. State, 110 id., 432.

*Tom Garrard*, Attorney for the State, and *Grover C. Morris*, Assistant Attorney and *R. K. Hanger*, District Attorney, and *W. H. Tolbert* and *Julian B. Mastin*, for the State.—On question of conspiracy: Shaw v. State, 229 S. W. Rep., 510; Gerber v. State, 232 id., 335; Flores v. State, 231 id., 786; Hardy v. State, 231 id., 1097; Watson v. State, 237 id., 298, and cases cited in the opinion.

MORROW, Presiding Judge.—The offense is the unlawful manufacture of intoxicating liquor; punishment fixed at confinement in the penitentiary for one year.

According to the witness Carter, a constable, he, in company with officers Massey and Hays, went at night-time to an island consisting of something over one hundred acres of land, situated in Lake Worth. The island was reached by going in a boat. They observed a still at which four men were present. The still was situated in a woods where there was a little underbrush. The witness and his companions secreted themselves at a point about twenty-five steps distant from the still, which was connected and under which a fire was burning. Whisky was in process of manufacture, and there was also whisky about the still. The conduct of the parties at the still was described by the witness. Each of them was taking part in the manufacturing operations. Haley had been away and returned in a boat. A conversation occurred in which they all took part and in which references were made to the officers. The matter of keeping watch was discussed, and appellant remarked: "Give me one more drink and I will go out there and mow them down like Johnson Grass." Crawford expressed the wish that Carter would appear; that he would like to build a fire under him. Appellant said that "he would like to see Carter and his kid come down and take him; that no one was going to take him." The argument as to which should go on picket duty resulted in Haley picking up a shotgun and stating

with an oath that he would go and would come back. After walking a few steps he encountered the officers, one of whom said: "All right, Mel, put them up." Haley made a demonstration with his gun, and said, "By", when he was shot. There was testimony that his gun was loaded. When the officers fired, the parties at the still ran and began firing. The blazing fire made a light. There was also a lantern at the still, but that was put out when the firing began. Crawford fired at Carter. Appellant at the time was some twenty-five feet distant from Carter. During the melee, shots passed through the coat which Carter was wearing. Crawford and Haley were arrested that night. Appellant and Gray were arrested on the following morning while still on the island. The shotgun which had been fired by Crawford was described. It contained two empty shells. Shells were also found on the ground near where the gun was found. Ammunition was found both upon the ground and in the boat which had been used by Haley. The shells contained buckshot.

According to appellant's theory, he was forty-three years of age, resided with his mother, and was engaged in farming. He had gone to the lake for the purpose of fishing, and had some trot-lines there. While he and Crawford were fishing, he observed a lantern and a fire, and out of curiosity went to the fire and found Haley near the stills out of which whisky was running at the time. There was some whisky also on hand. Haley started away, his purpose being unknown to the appellant, and soon afterwards shots were fired. When this occurred, he had been at the still about thirty or forty minutes, but had done nothing towards the making of the whisky and had no interest in it; that he had no intent to spend the night there but did intend to get some whisky before leaving. He fled upon the beginning of the firing and did no shooting. He saw guns upon the ground. He spent the night upon the island, and about daybreak he and Gray went down to the landing, where they were arrested. Gray also fled upon the beginning of the shooting. Appellant later went to the place where the still had been located, in company with one Egan. They observed the location of the bullet marks upon the trees, and also examined the brush and made an experiment to see whether the parties at the still could be seen from the place where the officers were supposed to have been. He testified that when a fire was burning, the identity of the men could not be determined; that he could see the forms but could not distinguish the parties. He denied having any gun at the time of the incident, and also denied making the remarks attributed to him by the witnesses. Several other witnesses who were with Carter testified in substance as he did, connecting all the parties mentioned with the transaction.

There are a number of bills of exception complaining of the admission in evidence of the acts and declarations of Crawford, Haley and Gray, which were described by the witness and the other offi-

cers at the time of the transaction and leading up to the time of the
arrest. Against the admission of this testimony, the point is made
that this evidence did not portray his acts and were therefore not
chargeable to him. If the testimony of the State witnesses is to be
believed, appellant, Haley, Crawford and Gray were all engaged
in the unlawful manufacture of intoxicating liquor, and from their
conversations it appeared that they had formed a conspiracy to resist
arrest and had provided themselves with arms; that when the offi-
cers appeared, Haley was shot in the attempt to resist the arrest,
and the shots fired by the others were in pursuance of the conspiracy
and in furtherance of the common design.

A detailed discussion of the bills raising this question is deemed
unnecessary. The testimony was admissible under the well-established
rule governing the admissibility in evidence of the acts and decla-
rations of the co-conspirators. Richards v. State, 53 Texas Crim.
Rep., 400; Hays v. State, 90 Texas Crim. Rep., 192; Shaw v. State,
89 Texas Crim. Rep., 205, 229 S. W. Rep., 510; Gerber v. State, 90
Texas Crim. Rep., 37, 232 S. W. Rep., 334; Thompson v. State, 90
Texas Crim. Rep., 15, 234 S. W. Rep., 401. The receipt of the evi-
dence mentioned was also justified under the res gestae rule. Hardy
v. State, 89 Texas Crim. Rep., 469, 231 S. W. Rep., 1097.

Complaint is made of the refusal of the court to receive in evi-
dence details showing the location of the wounds upon Haley. The
excluded evidence would have shown that one was upon the breast
and the other upon the side of his back. It may be res gestae but
the harmful consequences of excluding it are not apparent. If
Haley were on trial for an assault upon the officers or they for
assault upon him, the matter might be material.

Appellant sought to show by his relatives and those of Crawford
that before leaving their homes on the afternoon preceding the com-
mission of the offense, they had made declarations to the effect that
they were going to the island fishing with their trot-lines. There
are instances in which when the prosecution relies upon the acts or
declarations of the accused on trial to show malicious or criminal
intent, his prior statements may be introduced in explanation thereof.
See Jackson v. State, 55 Texas Crim. Rep., 79; Watt v. State, 90
Texas Crim. Rep., 447, 235 S. W. Rep., 890, and cases collated. It
is believed that the application of this exception to the rule against
hearsay testimony does not obtain in the present case. The declara-
tions that the appellant was going to the island for the purpose of
fishing would not explain the State's testimony that he was engaged
in operating a still. The State did not rely upon his mere presence
at the island. That he might have had trot-lines there had been
engaged in fishing was not inconsistent with the State's case. In
his testimony, he conceded that he was present and had been for

some time when the raid was made upon the still. According to the
State's testimony, he was taking part in its operations. The prof-
fered testimony, we think, would be more accurately classified as an
effort by hearsay evidence to corroborate his own testimony upon the
trial. See Medford v. State, 86 Texas Crim. Rep., 239; Hutchinson
v. State, 58 Texas Crim. Rep., 228; Watt v. State, supra.

The rejection of the testimony of the witness Shaw concerning
the experiment made by him after the transaction in order to demon-
strate that the officers could not have identified the appellant and his
companions at the still upon the occasion of the arrest was, we think,
properly rejected because it was an experiment and is not shown to
have been made under the same or similar conditions prevailing at
the time of the transaction. Whether this be true or not, however,
the appellant concedes in his testimony that he was present. That
the others present were those named by the State's witnesses is
likewise undisputed.

While on the stand, a witness testifying to the good reputation
of the appellant for truth and veracity, was asked on cross-examina-
tion if he had heard anyone say that the appellant's reputation was
good for anything. It is the position of the appellant that the
question extended the inquiry touching his reputation beyond the
matter of veracity. This is not clear. The question perhaps should
be interpreted as relating to the matter under investigation and
related by the witness. In any event, it was harmless. The witness
answered, "yes, sir", and proceeded no further. See Jinks v.
State, 33 S. W. Rep., 868; Shaw v. State, 45 S. W. Rep., 597; Jack-
son v. State, 77 Texas Crim. Rep., 347 S. W. Rep., 521; Ray v.
State, 60 Texas Crim. Rep., 138, 131 S. W. Rep., 542.

The other bills of exception in the record have been examined but
present nothing demanding a reversal of the judgment, nor requir-
ing a discussion.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

May 14, 1924.

LATTIMORE, JUDGE.—Appellant urges error on our part in de-
clining to sustain his contentions as set out in bills of exception Nos.
2, 7 and 13. Referring to bill of exceptions No. 2, there seems no
doubt of the proposition that what was done and said by Haley,
appellant and all the members of their party at the time the offi-
cers were watching them and at the time the shooting took place,
was part of the res gestae of the transaction. The still upon which
the liquor was being manufactured, was in operation and appel-
lant and the others were apparently engaged in the actual doing of

the thing which constituted the offense charged herein. Mel Haley was in the act of leaving the other parties and going out to do his part in carrying on said transaction, viz: acting as a picket for the others, when the shooting began. We think it clear that what was said and done by Haley and also by the officers who began shooting at him when he offered to shoot at them, was part of the res gestae.

Bill of exceptions No. 7 complains of the rejection of testimony as to where the wounds were that were inflicted upon Haley. We cannot see how the question of the location of said wounds could have possibly affected the issue as to the guilt or innocence of this appellant in the manufacture of intoxicating liquor.

The complaint evidenced by bill of exceptions No. 13 is the rejection of testimony of witnesses who went to the scene of the difficulty later and attempted to place themselves in the position occupied by the officers, and who offered to give evidence upon this trial of the facts that from their position they could not see and identify persons down at the place where the still had been located. None of the parties present at the time were at the place on the night in question and it appears manifest that they could not meet the requirements laid down by our decisions for the receipt of experimental testimony, i. e., that it must be shown that the experiment was made under the same or similar circumstances and situations as those which surrounded the actual occurrence.

Believing none of the propositions advanced by appellant in his motion to be sound, same will be overruled.

*Overruled.*