### R. F. THOMPSON v. THE STATE.

No. 6228. Decided April 27, 1921.

Rehearing denied June 24, 1921.

1.—Robbery—Recognizance—Practice on Appeal.

Where the appeal was dismissed because of a defective recognizance, and a sufficient recognizance was made thereafter, the appeal is reinstated and decided upon its merits.

2.—Same—Evidence—General Reputation—Injured Party.

Where upon trial of robbery, the reputation of the injured party was in no way an issue in the case, there was no error in refusing to admit testimony to prove the general reputation of the alleged injured party.

3.—Same—Evidence—Flight—Same Transaction—Acts of Defendant.

Upon trial of robbery, there was no error in admitting testimony showing that after defendant and his companion left the scene of the robbery they were pursued by several persons; (who appeared as witnesses for the State) and while engaged in flight and within a short distance of the scene of the robbery the defendant and his companion shot at some of the pursuing party. Following Taylor v. State, 49 Texas Crim. Rep., 10. Distinguishing Spriggins v. State, 42 Texas Crim. Rep., 341.

4.—Same—Evidence—Written Statement of Defendant—Confession.

On trial of robbery, there was no error in admitting in evidence the written statement of the defendant made two days after the alleged offense.

although said statement may have been used in evidence in other cases against defendant involving the same transaction. The admissibility of such confession is a question of law, and where it was made in conformity with the statute, there was no reversible error.

### 5.—Same—Involuntary Statement—Charge of Court—Practice in Trial Court.

While the testimony came within the line of authorities which hold that when the making of the alleged confession, or its voluntary character is contested, such questions should be submitted to the jury, yet where no exception was made to its introduction in evidence and no special charge requested, there was no error.

### 6.—Same—Evidence—Acts of Defendant—Practice in Trial Court.

Upon trial of robbery where defendant was asked by the State to stand up in order that a witness then testifying might look at him, and that he stood up, and the witness was asked whether he had ever seen him before, and the court informed him that he need not do so, and besides it was not shown in the record whether this objection to defendant's rising to his feet was made before or after defendant rose, there was no reversible error. Following Gallaher v. State, 28 Texas Crim. App., 227, and other cases.

### 7.—Same—Evidence—Defendant as a Witness—Practice in Trial Court.

Upon trial of robbery, where defendant took the witness stand and was asked to state whether or not his testimony as to what happened in Ranger and in other places was from his recollection or from what he had heard others say and from what he had read, to which an objection by the State was sustained, there was no reversible error, as the answer which the witness would have made was not responsive to the question and similar testimony was already in evidence.

### 8.—Same—Bill of Exceptions—Rule Stated—Practice on Appeal.

A bill of exceptions so framed as to compel this court to search the statement of facts in order to find out what is therein referred to and meant, is insufficient and defective, but even if the record be examined in reference thereto, there is no reversible error.

### 9.—Same—Value of Property—Indictment—Evidence.

Where, upon trial of robbery, the property alleged to have been taken by said defendant in said robbery was a diamond ring, there was no error in allowing the State to prove its value, although it is not necessary in indictments for robbery to allege the value of the property.

### 10.—Same—Evidence—Reputation of Third Parties.

Where, upon trial of robbery, the evidence showed that the offense was committed in a cabaret, there was no error in refusing defendant to bring out testimony to show what kind or character of persons frequented and worked in said cabaret, and what kind of business was there carried on. The bad character of the associates of the witness cannot be proved.

### 11.—Same—Sufficiency of the Evidence.

Where, upon trial of robbery, the evidence sustained a conviction under a proper charge of the court, there was no reversible error.

### 12.—Same—Rehearing—Reputation of Witnesses—Evidence.

Where it appeared from the record that the answers of certain State's witnesses, as to the character of the entertainment afforded the guests in the cabaret where the alleged robbery was committed, could not have been held admissible as affecting any legitimate issue in the case, there was no reversible error.

**13.—Same—Evidence—Flight—Acts of Defendant—Rehearing.**

Where, upon appeal from a conviction of robbery, the record showed that what occurred after the alleged robbery and while defendant and his companions were on their way to the place where arrested, in an effort to escape, was admissible to show flight, etc., there was no reversible error.

**14.—Same—Voluntary Confession—Charge of Court—Discretion of Court.**

When there is a conflict as to the voluntary character of an alleged confession which conflict is settled by the admission of said confession in evidence, it is the duty of this court to uphold the action of the trial court unless it is here made to appear that such action was an abuse of the discretion of the trial court, which in this instance is not shown, and there was no reversible error.

**15.—Same—Indictment—Robbery—Value of Property—Rule Stated.**

While the indictment in a robbery case need not allege value of the property taken from the injured party, yet some value must be shown, and there was therefore no error in admitting testimony as to the value of the alleged diamond ring. Following Williams v. State, 34 Texas Crim. Rep., 523, and other cases.

Appeal from the District Court of Eastland. Tried below before the Honorable E. A. Hill.

Appeal from a conviction of robbery; penalty, imprisonment in the penitentiary for eleven years.

The opinion states the case.

*R. N. Grisham, G. Hubbard, J. B. Perry,* and *J. S. Grisham* for appellant.

*C. M. Cureton,* Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of robbery, and his punishment fixed at eleven years' confinement in the penitentiary.

Our Assistant Attorney General makes a motion to dismiss the appeal because of a defective recognizance. An examination of said recognizance shows that it appears to be in form a recognizance for appearance before the District Court of Eastland County and not before this court upon appeal.

For the reasons given by us for dismissing an appeal for a similar recognizance in cause number 6229, R. F. Thompson v. State, 234 S. W. Rep., 400, said opinion being this day handed down, the State's motion to dismiss is granted and it is so ordered.

*Dismissed.*

ON REHEARING.

June 1, 1921.

LATTIMORE, JUDGE.—A sufficient recognizance having been made by appellant in this case, the appeal, which was dismissed by us at a

90 T. C.—1

former day because of lack of such recognizance, is reinstated, and the case is now decided upon its merits.

Appellant excepted to the refusal of the trial court to permit him to prove the general reputation of the alleged injured party, as being that of a dangerous and violent man. The court was correct in declining to permit this testimony. Said reputation was in no way an issue in the case. It was charged that appellant and another with pistols, robbed Leon Wilson and took from him certain property. There was no claim on the part of either the State or appellant of any facts, or the existence of any issues, which could have been affected or made clearer either way, by proof of Wilson's reputation. Such evidence would neither have been in defense nor mitigation of the crime, if any, of appellant.

By a number of bills of exception complaint is made of the testimony of various witnesses to facts which may be stated as substantially showing, that after appellant and his companion Mims left the cabaret where the robbery is alleged to have occurred, they were pursued by several persons who appeared as witnesses, and while engaged in flight, and within a block of said cabaret, appellant and his companion shot, and shot at various ones of said pursuing party. The evidence complained of in said bills of exception relates to the facts pertaining to said flight and shooting. The objection thereto was that it was a different transaction; subsequent to the one for which appellant was on trial; was not *res gestae,* and was prejudicial to the rights of appellant. As illustrative of what the testimony showed, the witness Lloyd testified that he was in the cabaret where the alleged holdup occurred, and ran out at a side door and through the front door of a restaurant which adjoined said cabaret, and about the time he got to said front door he heard a shot and saw appellant and Mims about thirty steps in front of him, and about the same distance from the door of the cabaret. The witness followed said parties. Barnes, another witness, joined Lloyd. When they got to the corner of the alley (in the same block as said cabaret), Mims shot Barnes, and appellant, from a place within a garage near by, came to the door with two pistols in his hand with which he was also shooting at said parties. Lloyd got behind a post, and Barnes was shot in the neck and fell. Appellant went back into the garage, and Barnes told Lloyd to follow them, which Lloyd did and saw appellant and Mims run over to the old depot platform and thence across some mud, both running. Lloyd followed them to a lumber yard where he said they tried to shoot at him again. From the lumber yard appellant and Mims ran into some rooming house where they were arrested shortly afterward. It hardly seems necessary to cite authorities to show that the flight of appellant and his companion and what they did during said flight in an effort to prevent arrest, and to aid them in escaping, was admissible. In Taylor's case, 49 Texas Crim. Rep., 10, we held it proper for the State to show what the accused did in his attempt to

escape after a posse surrounded the place where he was. Mr. Branch, in his Annotated Penal Code, Section 135, cites many authorities as supporting the proposition that flight and its attendant circumstances may be proved. The case of Spriggins v. State, 42 Texas Crim. Rep., 341, is there cited as holding that if such attendant circumstances show an independent crime it would not be admissible, but in that case ·the accused was confined in jail for murder, and during such confinement broke jail and inflicted serious injury upon the jailer in making his escape. This appears to us as vastly different, from the principle involved, to a case where one flees from the scene of a crime, and shoots at his pursuers, or at parties who appear to interfere with his effort to escape. Appellant's contention throughout was that at the time of this entire occurrence he was in such mental condition from . the excessive use of liquor as that he had no sort of knowledge or recollection of any of the events connected with the alleged crime or his flight, or anything that occurred until several days thereafter. It occurs to us that evidence of his flight, including what he and his companion did during said flight, showing their actions to be such as human. experience would expect from persons in similar situations, would seem to reflect a consciousness of crime committed and a desire to evade the consequences thereof, and for this additional reason same would be admissible. We are of opinion that the evidence regarding this matter showed a continuous flight, and what occurred at the garage and prior to the time the two accused parties were arrested, was pertinent testimony on this trial.

The State offered in evidence the written statement of the accused made two days after the alleged offense. Objection was made, (1) because when made appellant had no knowledge or intention that same would be used in more than one case, it being stated as part of the ground of objection that said statement had already been used in other cases against appellant; (2) because said statement was not taken in manner and form as required by law; (3) because at the time it was made appellant had been beaten and injured and was under treatment of a physician, and had been given "third degree methods," and that it was shown and would be shown by other testimony that he was not conscious at the time said statement was made.

(1) An examination of said statement as it appears in the record shows it to be in entire accord with the provisions of Article 810, Vernon's C. C. P., relating to the manner and form of written confessions. (2) Even if it be true that the statement had been used in evidence in other cases against appellant, such fact does not appear in the bill of exceptions other than by the statement thereof by the accused in presenting his objections, which would not be sufficient to bring the matter before us as a fact. However, we know of no reason or authority for rejecting such statement because same had become material evidence in other cases growing out of or involving the same transaction. (3) There appears to have been no effort to

show by evidence to the trial court, at the time said statement was offered in evidence, that same had been obtained improperly, or as the result of any injury or wrong done to the accused. The terms of said instrument, in addition to being in conformity with the statute, appear coherent and connected. The admissibility of such confession is a question of law for the court. Vernon's C. C. P., p. 422. J. W. Strode, who witnessed said alleged confession, testified that at the time same was made appellant appeared to be normal and to understand what he was doing, and that he saw nothing apparently wrong with his mental condition at said time. That the father of appellant testified that about a week after the alleged offense, he saw appellant in jail and that he appeared dazed and unable to understand or communicate with witness, and did not seem to be in his right mind, and showed evidence of rough physicial treatment, and the further fact that appellant when a witness said he had no knowledge of having made such statement, would appear to bring the matter within that line of authorities which hold that when the making of the alleged confession, or its voluntary character, is contested, such question should be submitted to the jury. We might observe that the charge of the court in the instant case did not submit such issue, but no exception was taken thereto for such omission, nor was any special charge asked upon the subject. Said written statement being *prima facie* admissible, and it being the province of the accused, if not satisfied therewith and if desirous of having the execution thereof or its voluntary character submitted to the jury, to except to the charge for failure to so submit, and to present corrective special instructions, neither of which was done, no reversible error is shown.

There appears no error in the bill of exceptions presenting appellant's complaint of the fact that when asked so to do by the attorney representing the State, appellant stood to his feet in the courtroom in order that a witness then testifying might look at him, said witness being asked if she had ever seen him before. As we understand said bill appellant's attorney made an objection, but whether this objection was made before or after appellant rose to his feet, is not stated. The trial court, when said objection was made, informed appellant that he could sit down if he desired. In Gallaher v. State, 28 Texas Crim. App., 280, the accused was, by the attorney for the State, caused to stand up before the jury while a broad brimmed hat was placed on his head and a handkerchief over part of his face for purposes of identification by a witness. This court declined to hold this error. See also Bruce v. State, 31 Texas Crim. Rep., 590. In Turman's case, 50 Texas Crim. Rep., 7, this court held that the accused could not be compelled to place a cap on his head for the purpose of identification. It not being shown in the instant case that appellant was compelled against his will to do anything, and that the trial court informed .him in substance that he need not stand but might sit down, no error is shown.

Appellant's bill of exceptions No. 11 is as follows: "While the witness R. F. Thompson was on the stand testifying in his own behalf, on redirect examination by his counsel, he was asked to state whether or not his testimony as to what happened in Ranger and in other places was from his recollection or from what he had heard others say and from what he had read. The State objected to any explanation by the said Thompson as irrelevant and immaterial. Said objections were by the court sustained.

"The witness would have answered, that all his testimony concerning the alleged offense, and offenses of robbery and assault with intent to murder, as made by him during this trial and upon other trials were statements made, not within his personal knowledge but based wholly on what others told him and what he had read in newspapers. To which action of the court in overruling said objections, defendant here now tenders this his bill of exception with reference to same." This bill states in one place that the objection of appellant was sustained,—in another that exceptions were taken to the overruling of said objections. We treat the bill as if the complaint was that the objections were sustained. We quote the bill at length in order to make evident the correctness of our statement that in the condition in which the matter was presented to the trial court it was not error to sustain said objections; and the further statement that in the condition of said bill it presents no error to us. Reverting to the question asked, we are constrained to wander what was the testimony of appellant as to what happened in Ranger, as referred to in said question? It occurs to us that if he had already sworn that he knew nothing of what occurred in Ranger, upon his return from Fort Worth, and at the time of the robbery, and that all he knew about that transaction was from hearsay and what he saw in the papers, then the answer thereto would be immaterial because merely a repetition of testimony already given. A bill of exceptions so framed as to compel this court to search the statement of facts in order to find out what is therein referred to and meant, is ordinarily held by us insufficient and defective. Examining the answer stated in said bill to be that which appellant would have given if permitted, it seems plain to us that same would not have been responsive to the question set out, and that same would have been of no value to appellant's case. A question as to whether his testimony as to what happened in Ranger and in other places, was from recollection or hearsay or newspapers,—would not seem to be answered by the statement: "All my testimony concerning the alleged offense, and offenses of robbery and assault with intent to murder, as made by me on this trial and other trials, were statements not on my personal knowledge, but based on what others told me and what I read in the papers." It appears likely that such answer, if made, would have been excluded as not responsive. In view of the entire testimony of appellant, to which we have been compelled to look because of the incomplete character of the bill, said an-

swer would appear to be of no value, and hence immaterial because throughout his testimony he asserted that he knew nothing of what occurred after he came back to Ranger and when the robbery occurred. We apprehend that appellant would not desire to have the jury believe that his testimony as given on this trial or at former trials,—of his life in Limestone County, or his work in Burkburnett "and other places," was to be taken by the jury as things known to him only by newspaper reading and hearsay. There is no compliance with the rules as to bills of exception, to refer therein to *all testimony* bearing on this, that or the other question, either as made on the instant trial or at some other time. This would not have informed the jury, and does not inform this court, what was meant and included in such reference, and we uphold the action of the trial court in sustaining the objection, and find ourselves unable to conclude that same presents any error.

The property alleged to have been taken by appellant in said robbery, was a diamond ring. The State was allowed to prove its value over objection that such proof was incompetent inasmuch as no value was alleged in the indictment. It is not necessary in indictments for robbery to state the value of the property alleged to have been taken. Sec. 2387, Branch's Ann. P. C., and authorities cited. As such value could not affect either the question of guilt or the penalty which should be inflicted, we see no error in allowing proof of such value.

By his bills of exceptions Nos. 8, 9 and 14, appellant complains because he was not allowed to bring out what kind and character of persons frequented and worked in the cabaret where said alleged robbery took place, and what kind of business was there carried on. That intoxicating liquor may have been unlawfully sold there, and immoral women employed, and unseeming conduct indulged in, and that all this was with the connivance of the officers of the law, would not seem to give appellant the right to rob the proprietor of such place, or to shoot up the house, nor would questions as to the general character of entertainment afforded at such place, or by one woman employed there who was not a witness, nor the general reputation of said place as a rendezvous of vice and crime, be a proper or legal way to attack the credibility of witnesses who were in such place at the time of the alleged robbery, nor the credibility of Wilson who had been the proprietor of said place for three days at the time of the alleged holdup. The bad character of the associates of a witness can not be proven. Branch's Ann. P. C., Sec. 165.

We see no good that can come from a recital of the facts in this case. Appellant was a young man about twenty-five years old, and with one Mims appears to have gone into a cabaret in the town of Ranger in Eastland County, and, beyond any question or dispute, to have taken from Leon Wilson a diamond ring, at the point of their pistols. The parties effected their escape, shooting at various persons who appeared to interfere with them in their effort to get away. Ap-

pellant was arrested, placed in jail and given a trial a few weeks afterward

We are unable to conclude that the record presents any reversible error, and an affirmance is ordered.

*Affirmed.*

ON REHEARING.

June 24, 1921.

LATTIMORE, JUDGE.—In his motion for rehearing appellant complains we should have held admissible the matters set out in his bills of exception Nos. 8, 9 and 14, as bearing on the issue of bias, motive and interest, and also to show the business, etc., of various witnesses for the State. Bill No. 8 shows that the State's objection was sustained to asking a witness, "How did Florence Pippin entertain at the cabaret?" Bill No. 9 shows that a State witness was asked, "State the character of entertainment afforded the guests in the cabaret where the alleged robbery was committed, and whether it had the general and notorious reputation of being a rendezvous of vice and common resort for crime?" The question asked as set out in bill of exceptions No. 14 is identical in effect with that last above. Florence Pippin, the woman asked about in bill of exceptions No. 8, was not a witness. None of the witnesses for the State are shown to have been employees at the cabaret where the alleged robbery occurred. Leon Wilson, the alleged injured party, seems to have acquired control of said cabaret a few days before the robbery. It thus appears without further discussion that the answers to the questions referred to could not have been held admissible as affecting any legitimate issue in the case. Appellant appears to have been allowed much latitude in his cross-examination of each State witness, as to the antecedents, occupation, etc., of said witnesses as well as other matters reasonably calculated to give to the jury information which might affect the credibility of such parties.

We are unable to conclude otherwise that that what occurred after the alleged hold-up, and while appellant and his companions were on their way to the place where they were arrested, was admissible. If the State's testimony be true, said parties had committed a robbery and were escaping from the scene. They shot at various parties who appeared to be pursuing them, or who got in their way, and tried to shoot at others as they went through a lumber yard and ran across mud and over an old depot platform, etc. This appears to us to be flight within the legal acceptation of that term.

When there is a conflict as to the voluntary character of an alleged confession offered as evidence in the trial court, which conflict is settled by the admission of said confession, it is our duty to uphold the action of the trial court unless it is here made to appear that such

action was an abuse of the discretion of the trial tribunal. This we would not hold, when practically the only evidence rebutting the voluntary character of the confession was that of the accused and his father, the State's evidence supporting the voluntary character of said confession being a number of witnesses who were without apparent interest in the case.

It appears to be well settled in this State that the indictment in a robbery case need not allege value of the property taken from the injured party. It is, however, true that such property must be shown to have had some value, or a case would not have been made out. In the case of Williams v. State, 10 Texas Crim. App., 8, the property taken was one sheep, but no value was alleged. In the case of Williams v. State, 34 Texas Crim Rep., 523, the property alleged to have been taken was a check, no value of which was alleged. The indictment was upheld in each case.

This disposes of the contentions contained in appellant's motion for rehearing, and being unable to uphold any of them, said motion will be overruled.

*Overruled.*