# JUNE 10, 1942

## OSCAR BEACHEM V. THE STATE.

No. 22072.  Delivered  May  6,  1942.
Rehearing  Denied  June  10,  1942.

The opinion states the case.

*Key & Kimmel* and *Jimmie Cunningham,* all of Lubbock, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

The conviction is for the robbery of Oran Wilson, Jr., by assault and by putting him in fear of life and bodily injury; the punishment, confinement in the State penitentiary for 99 years.

Oran Wilson, Jr., and Miss Westmoreland, college students, ages 19 and 18 years, respectively, were, on the night of September 28th, 1941, at about one o'clock A. M., seated in Wilson's Buick automobile, parked by the side of a road in the suburbs or sparsely settled section of the City of Lubbock, when, according to their testimony, a negro man, partially disguised by a handkerchief about his face, approached the car and ordered them to "Come out, I want your car." The

order was complied with, whereupon Wilson was robbed of $2.48, which he had on his person. He said that he delivered the money because of the threat of the negro to kill them and because he saw, in the negro's hand, what he thought was a pistol. After the robbery was effected, the parties were ordered to get back into the car, and, as Wilson was so doing, he was struck on the head with a hammer. Wilson fought back, and, in the fight that ensued, he was cut and stabbed with a pocket knife, the blade of which was broken off in his breast. While the fight was going on, Miss Westmoreland tried to start the car, but was unable to do so because the keys thereto had been removed from the ignition switch. She then fled, whereupon the robber pursued her; she outran him and escaped to a house in the vicinity, where she reported the crime, and from which the officers were notified. While the robber was chasing Miss Westmoreland, Wilson made his escape in another direction. He reached a house, where he, too, reported the crime, and officers were notified.

As Wilson was fleeing, he saw what is referred to as a " '33 model plymouth sedan," parked nearby.

As a result of the reports, four officers of the City of Lubbock answered the call and began an investigation. They found where the car described by Wilson had been parked; they found a puddle of blood where someone had stood by the car; they were able to determine the character of tracks made by the tires of the car. With this information, the officers began a systematic search of the city for a car corresponding to the description given by Wilson, and later found such a car near where appellant lived; they were particularly attracted by the appearance of blood on the front bumper. The officers, upon discovery, went to the appellant's house, awakened him, and told him that they wanted to talk with him. He invited them into his house, whereupon he was interrogated relative to the blood on his car, which he explained by saying that it was from his leg which he had skinned on a bicycle. His leg showed that it was cut. As a result of a search of his room, the officers found bloody clothing "wrapped in a paper and crammed behind the water heater," among which clothing was a pair of trousers with a cut place corresponding with the cut found on appellant's leg. Appellant admitted to the officers his ownership of the Plymouth car. He was arrested and carried to the city jail. The next morning, a hammer and the keys to the Wilson car

were found near where the Plymouth car had been parked. A handle of a knife with a blade broken or missing was found about a block from the car and at a point between where the Wilson car and the Plymouth car had been parked. There was evidence sufficient to show that the hammer and knife were of the same general description as those kept on the premises where appellant was employed, and to which he had access.

Both Wilson and Miss Westmoreland, while testifying in behalf of the State, identified appellant as the robber.

The appellant did not testify as a witness in his own behalf.

The facts abundantly support and authorize the jury's conclusion of guilt.

Miss Westmoreland's identification of appellant was made under the following circumstances: After appellant had been arrested, she was carried to the city jail with a view of having her to determine whether or not she could identify him as the robber. She was unable to do so without hearing his voice. She instructed the officers to have the appellant repeat or say certain words. The record does not reflect what those words were, other than that they were "curse" words. The action of the officers in requiring appellant to repeat the words in the presence and hearing of the witness, under the circumstances mentioned, and the identification based thereon, is claimed by appellant to constitute reversible error. The bill of exception presenting this question reads as follows:

"BE IT REMEMBERED that upon the trial of the above entitled and numbered cause the state adduced the following testimony from the witness Yvonne Westmoreland, over the objections of the defendant.

" 'That on the morning after the robbery she was called to the City Jail by the officers, to look at the defendant and hear him talk; that she told the officers what to have the defendant say, and the defendant was required to say the things the officers were instructed to have him say by the witness, and that the witness was in custody of the officers that required the defendant to say the things the witness requested, and from his general appearance, build and voice, the defendant was the one who committed the robbery.' "

The objection to the testimony was of a general nature, but was sufficient to raise the question of a violation of the mandate of the Constitution of the State of Texas prohibiting self-incrimination of one accused of crime. The trial court's unqualified approval of this bill of exception constitutes a certificate by him to the effect that, while the appellant was under arrest and in jail, he was "required," by the officers having him in custody, to say certain words, in the presence and hearing of the witness, as a result of which the witness was enabled to testify that he was the robber. The bill of exception does not reflect — nor does it otherwise appear from the record — how or in what manner — whether by force, threats or violence — appellant was required by the officers to say the words the witness instructed them to have him say. The idea that what was said was voluntary on the part of the appellant is, however, expressly excluded.

The admissibility of the testimony here presented involves two cardinal principles of law, viz.: (a) whether there is shown a violation of the provision of Art. I, Sec. 10, of the Constitution of the State of Texas, which prohibits self-incrimination; (b) whether there is shown a violation of Art. 727, C. C. P., which prohibits the use of an oral confession against one accused of crime, made while under arrest or while confined in jail.

Under the limited objection made to the introduction of this testimony, it is doubtful if the confession feature is properly before us. If such enters into the determination of the constitutional question, it is only by reason of the fact that the statutory right preserved to one accused of crime is of the same general nature.

The pertinent provision of Art. I, Sec. 10, of the Constitution of the State of Texas reads as follows:

"In all criminal prosecutions the accused — — — — — — — — — — — — — shall not be compelled to give evidence against himself, — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — ."

While this constitutional provision prohibits compelling an accused to give evidence against himself, its application is in no wise limited strictly to the giving of such evidence upon the trial of the case. To the contrary, the inhibition extends

and applies whenever one is under arrest for a violation of the law or is being held by the authorities investigating a charge against him. It stands as a guarantee to everyone of the right to refrain from giving testimony which will tend to reveal his criminal connection with an offense denounced by law. 44 Tex. Jur., Sec. 25.

In the instant case, the identity of the appellant as the robber was necessary to the establishment of the State's case. One of the witnesses present at the scene of the crime was unable to make that identification until she not only heard appellant's voice but heard him utter certain words, which he was required to repeat in her presence while under arrest and while confined in jail. After the appellant had repeated the words, the witness was, by reason thereof, able to identify him as the robber.

Do such facts show that the appellant was compelled to give evidence against himself in violation of the constitutional provision mentioned?

Much has been said by this court touching the question of what constitutes self-incrimination within the meaning of the constitutional provision, and apparent conflicts appear. The various holdings are based upon, and, of necessity, arise by, what are construed to be, exceptions to the application of the constitutional inhibition. Among those exceptions are, what are known as the "footprint" cases, wherein identification was established by a comparison of footprints (Walker v. State, 7 Tex. App. 245; Pitts v. State, 60 Tex. Cr. R. 524, 132 S. W. 801; Hampton v. State, 78 Tex. Cr. R. 639, 183 S. W. 887; Rippey v. State, 86 Tex. Cr. R. 539, 219 S. W. 463; Lunsford v. State, 80 Tex. Cr. R. 413, 190 S. W. 157; Johnson v. State, 238 S. W. 933, 91 Tex. Cr. R. 291; Landry v. State, 35 S. W. (2d) 433, 117 Tex. Cr. R. 396); also, the "fingerprint" cases, to the same effect (McGarry v. State, 82 Tex. Cr. R. 597, 200 S. W. 527; and Conners v. State, 134 Tex. Cr. R. 278, 115 S. W. (2d) 681), wherein the accused was required to give his fingerprints; also, cases involving identification by personal appearance or physical examination (Land v. State, 34 Tex. Cr. R. 330, 30 S. W. 788; Bruce v. State, 31 Tex. Cr. R. 590, 21 S. W. 681; Thompson v. State, 90 Tex. Cr. R. 15, 234 S. W. 401; Rutherford v. State, 135 Tex. Cr. R. 530, 121 S. W. (2d) 342; and Ash v. State, 139 Tex. Cr. R. 420, 141 S. W. (2d) 341.

The basic and underlying principle upon which these exceptions to the application of the constitutional inhibition mentioned are founded lies in the fact that the evidence there involved was not produced by the accused, that is, by the independent act or volition of the accused, but was produced by, and was the result of, the acts of the officers or others. It follows, therefore, in the instant case, that, unless the evidence here complained of was admissible as an exception, that is, as having been produced by the officers as distinguished from having been produced by the accused, it comes within the constitutional inhibition mentioned. The determining factor in this case is whether the evidence which incriminates the accused was produced by him or by the officers.

While not expressly so stated in the opinion, the application of the principle stated controlled in the dispostion made in the case of Apodaca v. State, 146 S. W. (2d) 381, 140 Tex. Cr. R. 593. There the accused was compelled to do and to perform certain acts in the presence of, and required of him by, the officers who had him under arrest and in custody, as a result of which they were enabled to determine the incriminative fact of his intoxication. The acts there required to be done and performed were personal to the accused, requiring the exercise of his volition. Under such a state of facts, this court held that the evidence so produced was in violation of the constitutional provision mentioned.

No legal distinction is perceived between the Apodaca case, supra, and the instant case. Here the accused was required to produce the evidence by which his identity was established by the witness, and without which his identity was unknown to the witness.

The holding in the case of Ash v. State, supra, is not at variance with the Apodaca case, supra, nor with the instant case. The disposition there made turned not upon whether the accused was required to produce evidence against himself, but was based upon the well established rule that, the officers having the accused lawfully under arrest, such arrest carried the right of search, and the evidence so found or produced was the result of that search.

From what has been said, it follows that Miss Westmoreland's identification of the appellant as the robber was based

upon evidence produced by the appellant, under the circumstances mentioned, and was obtained in such a manner as to bring it within the constitutional provision prohibiting self-incrimination.

The bills of exception complaining of the receipt in evidence of the result of a search of appellant's premises show that the officers had the permission or consent of the appellant to make the search. Error is, therefore, not reflected thereby.

The other matters appearing will not likely arise upon another trial and, therefore, are not discussed.

For the reason assigned, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Reversal was predicated upon appellant's bill of exception number four, which the State urges was too general in the objections stated, that the same evidence was developed by appellant's attorney on cross examination of the witness, and that part of the evidence objected to was admissible, and, therefore, a general objection to all of it was unavailing.

The bill of exception in question recites that over appellant's objection Miss Westmoreland testified as follows: "That on the morning after the robbery she was called to the City Jail by the officers, to look at the defendant and hear him talk; that she told the officers what to have the defendant say, and the defendant *was required* to say the things the officers were instructed to have him say by the witness, and that the witness was in custody of the officers that required the defendant to say the things the witness requested, and from his general appearance, build and voice, the defendant was the one who committed the robbery.

"Be it further remembered, that the State admitted the defendant was in custody at the time herein complained of.

"And the defendant objected to the admission of such testimony for the reason that it is not shown to be a part of the res gestae, and did not show that the defendant was the man that committed the offense, *and a showing had been made that the defendant was in custody at the time he was required to appear before the witness and repeat things that the officers told him to say*, and the defendant further moved the court to instruct the jury not to consider the evidence for any purpose which objection and motion was by the Court overruled, and the defendant then and there excepted * * *"

We think a fair construction of the bill shows that a question of identification of appellant by the witness was involved; that while appellant was in the city jail the witness was taken to said jail and appellant was required by officers to say certain things suggested to the officers by the witness; that after hearing his voice in repetition of the things appellant was told to say the witness identified appellant from his "general appearance, build and voice." There is no doubt that it was not improper for witness to inspect appellant and, if she could do so, identify him from his appearance, and his "voice" as well, if heard in a conversation in which words were not put in his mouth at her suggestion, and he required to repeat them. The recital in the bill that it had been shown that appellant was in custody at the time "he was required to appear before the witness and repeat things that the officers told him to say" was sufficient, we think, to apprise the court that appellant was objecting to such proceeding and to any identification based on that circumstance.

The State having referred us to the witness' cross examination upon the theory that this would cure the error, if any, in admitting her testimony on the point at issue upon direct examination, we observe that the witness in detailing the robbery testified as follows:

"Of course it was so dark I couldn't tell what it was but I could tell he had something in his hand behind his back. I paid particular attention to the voice of the man that committed this robbery and everything he said was vile language, and he did considerable talking during that time."

On the point of identification she testified on direct examination. "The next morning after the robbery I saw the negro that robbed Mr. Wilson, at the City Jail, and on that occasion

at the City Jail I had an occasion to hear the negro's voice and listened to him talk and I was able to identify the voice that I heard of the defendant as being the same voice that I heard that committed this robbery. I was able to identify the party who robbed Oran Wilson only by his build. I had a chance to look him over that morning to identify him by his voice and I would say the defendant is the party that robbed Oran Wilson. And I base that identification on his build, general appearance and voice."

On cross examination upon the same issue she testified as follows: "I stated that I saw this defendant at the police station and that was the first time I saw him to see what he really looked like. I was advised before I went down there that I was going there to identify someone. The officer told me they just wanted me to see if he was the right man. There were no other negroes in the police station at the time I was there and this negro was the only one in my presence at that time and I could identify him by his build. There is always a chance of being mistaken in identifying a person from his build alone but it was the same build as the man of the night before. This negro at the station was requested by me through the officers to talk. I told the officers what to ask him to say and they had him to say what I requested. In my request to the officers I stated to them that all he did was to curse and I said that if he did that I think I could identify him by his voice and they had him to curse."

Because counsel for appellant cross examined the witness upon the very same matter which was admitted over objection during the direct examination, developing no new facts, would not nullify his prior objection.

Our statute — Art. 727 C. C. P. (1925), in substance, provides that a confession of an accused shall not be used against him if obtained while he is in jail or custody, unless it is in writing and after a proper warning. If the statement be res gestae the statute is inoperative. The bill of exception here involved recites that the court's attention was called to the fact that the things which happened at the city jail were not res gestae, and therefore, such exception to the operation of the statute was absent in the present instance. The statute has been held not confined to strictly technical confessions, but to cover many acts other than strict confessions. See 18 Tex. Jur. Sec.

89, p. 168, and many illustrated cases cited; Branch's Ann. Tex. P. C. Sec. 59, p. 32. The State takes the position that because no words which appellant was directed to use were placed in evidence that nothing criminative against him was shown. We think this beside the point here involved. In Brent's case, 89 Tex. Cr. R. 546, 232 S. W. 845, proof of the mere fact that while in jail he called over the telephone to a certain party was held under the facts there shown violative of the statute, although nothing which was said in the telephone conversation was proven. The Brent case has been cited with approval in Young v. State, 91 Tex. Cr. R. 511, 240 S. W. 930; Williams v. State, 126 Tex. Cr. R. 616, 73 S. W. (2d) 540.

It is quite certain that if appellant had verbally admitted to Miss Westmoreland or to the officers at the time of her visit to the city jail that he (appellant) was the party who had perpetrated the robbery the night before proof of such admission would have been in violation of the statute. It is equally certain that if appellant had refused to speak the words as directed by the officers, or had refused to speak at all, the fact of such refusal could not have been proven against him. Carter v. State, 23 Tex. Cr. R. 508, 5 S. W. 128; Stanton v. State, 94 Tex. Cr. R. 366, 252 S. W. 519; Myers v. State, 96 Tex. Cr. R. 546, 258 S. W. 821 and cases therein cited; 18 Tex. Jur., Sec. 75, p. 150.

The occurrence in Kennison's case, 97 Tex. Cr. R. 154, 260 S. W. 174, is so similar to what happened in the present case that we are unable in principle to distinguish them. There Kennison was in jail charged with forgery. He was brought to the prosecutor's office and under the latter's direction wrote his (Kennison's) own name and certain other words which he was told to write. Upon the trial these writings were used by the State as standards of comparison to prove that Kennison executed the forged instrument.

It is clear from Miss Westmoreland's testimony that the voice of the robber, especially in the use of curse words and vile language registered upon her mind. She says, "I paid particular attention to his voice." She believed that if she could hear the words used by the robber repeated she would be able to recognize the voice. Appellant was required to repeat the words suggested by the witness. While the words themselves were not proven, the voice of appellant in repeating them was

used by the witness as a standard of comparison with the voice registered in her mind at the time of the robbery. It was apparent to the jury, as the record makes it apparent to us, that the probative force of Miss Westmoreland's positive identification of appellant as the robber rested on the incident which occurred at the city jail.

Possibly because of the manner in which the question was presented on original submission the writer of the original opinion based it largely on the proposition that appellant was forced to give evidence against himself. That question, under the facts here present, is so closely related and interwoven with a violation of our statute on confessions (Art. 727 C. C. P.) as to make both principles of law applicable. The present writer has preferred to discuss the incident complained of from the viewpoint of a violation of said Art. 727.

Believing the proper disposition of the appeal was made originally, the State's motion for rehearing is overruled.