122 So.2d 513

Willie SEALS, Jr.

v.

STATE of Alabama.

1 Div. 810.

Supreme Court of Alabama.

June 2, 1960.

Rehearing Denied Aug. 18, 1960.

Wallace L. Johnson, Mobile, for appellant.

**144**

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

LAWSON, Justice.

The appeal is from a judgment of conviction for rape, with the infliction of the death penalty.

Appellant, Willie Seals, is of the Negro race. The victim is a white woman. The crime was committed on Sunday night, June 15, 1958, shortly before midnight, or within a few minutes after midnight on the morning of June 16th.

Appellant was indicted on October 24, 1958, and was arraigned on October 29, 1958. Upon arraignment, Seals pleaded not guilty. As indicated above, the jury found him guilty and imposed the death penalty. Judgment and sentence were in accord with the verdict. There was no motion for a new trial.

The appeal is under the automatic appeal statute. Act 249, approved June 24, 1943, General Acts 1943, p. 217, § 1955, Cum. Pocket Part, Vol. 4, Code 1940, Title 15, § 382(1) et seq.

This is a capital felony and § 63, Title 30, Code 1940, made it the duty of the court on the first day of the session or as soon thereafter as practicable to make an order commanding the sheriff to summon not less than fifty nor more than one hundred persons, including those drawn on the regular venire for the week set for the trial of the case.

■■ The record contains an entry to the effect that the trial court ordered the

sheriff to summon 110 persons "for the venire from which the jury to try this case shall be selected." However, this entry must be regarded as surplus matter. It cannot be the basis for a reversal, for no question was raised in the trial court concerning the regularity of the order for the summoning of the venire. The entry should not have been included in the transcript. § 380, Title 15, Code 1940; Supreme Court Rule 25, Code 1940, Tit. 7 Appendix; Davis v. State, 259 Ala. 212, 66 So.2d 714; Scott v. State, 228 Ala. 509, 154 So. 113. See Smallwood v. State, 235 Ala. 425, 179 So. 217.

■ The rule in the cases last cited above prevails even under the automatic appeal statute. It has been said: "* * * Only review of rulings on trial with respect to matters of evidence are within the scope of the statute obviating the necessity of interposing seasonable objection * * *." Washington v. State, 259 Ala. 104, 107, 65 So.2d 704, 707.

The victim, Mrs. Mary Ann Hickey, was a divorcee at the time of the crime. She and her young child lived with her parents in Chicasaw, Mobile County.

On the evening of June 15, 1958, at about 7:30 P.M., she left her parents' home in her father's automobile. Later in the evening she and a man by the name of Chris Nicholas went to a club on Dog River.

After leaving the club Mrs. Hickey drove Nicholas to his place of abode on South Street in downtown Mobile, where they arrived at about 11:30 P.M. Nicholas got out of the automobile and Mrs. Hickey immediately started her trip to her parents' home.

She followed a route which led through a Negro district in Prichard, where she ran the automobile into a ditch. Being unable to get the automobile out of the ditch, she walked a block or two to a public telephone booth, where she called one Arthur Powell, Jr., at his home in Prichard. Powell operated a garage and ambulance serv-

ice and had been a friend of Mrs. Hickey since her high school days. The call to Powell was made at about 11:45 P.M.

Mrs. Hickey told Powell of her plight and requested that he have his garage send a wrecker as soon as possible because she was afraid of a Negro boy or boys that she had seen walking past the service station next to which the telephone booth was located.

Powell advised Mrs. Hickey: "Wait right there for me and I will come over and wait with you until the wrecker comes."

Mrs. Hickey opened the door to the telephone booth after completing her call to Powell. While she was still in the booth a Negro boy grabbed her arm. She was pulled out of the booth and dragged by two Negro boys to an outdoor toilet situated behind a Negro church. The church is approximately 175 yards from the telephone both. Several Negro houses are located between the booth and the church.

Mrs. Hickey was beaten and told that she was going to be killed while she was being dragged to the place where the rape occurred. When they reached the toilet, one of the boys hit her in the stomach. She fell on the ground between the toilet and a partition or screen in front of it. One of the boys fell down beside her while the other continued to hit her in the face. Her clothes were torn off.

Both boys ravished her. She lost consciousness while the second boy was committing the act. When she regained consciousness she was alone. She found her way to the automobile.

Within a very short time after he received Mrs. Hickey's telephone call, Powell left his home in an ambulance to go to her assistance. He used the ambulance simply because of its availability and speed. He found an automobile which he was able to identify as one which Mrs. Hickey had occupied. A purse containing information showing that it belonged to Mrs. Hickey

was found on the seat of the car. Mrs. Hickey was not in the automobile.

Powell searched the neighborhood for Mrs. Hickey. After a lapse of several minutes he returned to the automobile. Mrs. Hickey was in it. She was hysterical. Her face was swollen and bloody. One of her eyes was closed. Her shorts were "about half on and half off." They were ripped all the way down the side. Her blouse was unbuttoned and her "underpants" were on the seat of the car. She did not have on shoes. Her clothes were "soaked." It had been raining.

With the aid of a passing motorist, a Negro man, Powell placed Mrs. Hickey in the ambulance and carried her to the Mobile Infirmary.

The doctor who examined and treated Mrs. Hickey at the hospital testified that when he first saw her she was in a semi-comatose state from shock and was quite hysterical. It was difficult to recognize her. Her face was swollen. Her eyes protruded. She bled from both nostrils. Her lip was swollen almost to her nose. She had a laceration on the right side of her face almost an inch long, which was jagged and "Y" shaped at one end. The laceration extended into her mouth and required a total of a dozen and a half stitches. Her gums bled. One tooth was cracked. There were bruises on her chest and abdomen. Blood and grit were found on the entrance to her female organs, which showed superficial irritation. A bit of blood was "oozing" from her cervix. Live spermatozoa were found.

Mrs. Hickey remained in the hospital for approximately ten days. She remained at her parents' home for almost two weeks after she left the hospital, going out only infrequently during that period of time.

Seals steadfastly denied his guilt and sought to establish an alibi. He contends here that the State failed to produce evidence identifying him as one of the persons who raped Mrs. Hickey.

It is without dispute in the evidence that the telephone booth and the service station were brightly lighted at the time Mrs. Hickey was pulled from the booth. She was able to see her assailants and did see them before they dragged her into the darkness where the attacks occurred.

On July 2, 1958, Mrs. Hickey picked Seals and another Negro by the name of Lott from a police line-up of nine Negro men. She testified that she recognized his voice as well as his facial characteristics and other means of identification. The record does not show that Seals was compelled to repeat any words which the prosecutrix said were used by her assailants during the attack upon her. See Beachen v. State, 144 Tex.Cr.R. 272, 162 S.W.2d 706; State v. Taylor, 213 S.C. 330, 49 S.E.2d 289, 16 A.L.R.2d 1317.

At the trial Mrs. Hickey positively identified Seals as being one of the men who had raped her.

■ The question of identification was entirely one of fact for the jury. As we have said, the victim's identification of the defendant was positive. We cannot substitute our judgment for that of the jury. The claimed inconsistencies and contradictions concerning the manner in which the "line-up" was conducted were before the jury and may not be accepted here as controlling.

The jury saw and heard the witnesses as to identification and as to the alibi, and it was for the jury to determine the weight to be given to the testimony.

■ On the morning of June 17, 1958, Mrs. Hickey's shoes and a button from the shorts she was wearing at the time of the attack were found at the place where she said the attack occurred. These articles were introduced in evidence without error, as they tended to corroborate her testimony as to the place where the attack occurred.

■ The other articles of clothing worn by Mrs. Hickey at the time of the attack

were also admitted without error. They were muddy, badly disheveled, some articles were torn and some contained bloodstains. These articles had a tendency to illustrate what the prosecutrix claimed had occurred and were therefore properly admitted in evidence. Smith v. State, 248 Ala. 363, 27 So.2d 495; Allford v. State, 31 Ala.App. 62, 12 So.2d 404, certiorari denied 244 Ala. 148, 12 So.2d 407.

■ The photographs of the scene of the crime and of the telephone booth were properly admitted in evidence as tending to elucidate a material fact under inquiry. Although the evidence does not show the exact date on which two of the photographs were taken, it is made to appear that those photographs show the telephone booth and outdoor toilets as they appeared on the night of the crime.

■ The defendant was first interrogated concerning the crime on Monday afternoon, June 16, at the home of some colored persons by the name of Coulston, which was located almost next door to the service station and telephone booth. At the time the defendant was wearing a plaid shirt. Some of the plaids were a light blue with a greenish tinge. Other plaids were gray, brown and black.

On the following day when the defendant was again questioned by the police officers he was not wearing that shirt and upon inquiry stated that the shirt was at his home. He accompanied the officers to his home and went through the motions of trying to locate the shirt but finally admitted that he had given the shirt to a friend of his by the name of John Middleton or Millender.

The State produced Middleton, alias Millender, as a witness, who testified among other things to the effect that he had been questioned by the police authorities of the City of Prichard and had been released; that after his release he told the defendant, Seals, that the police were looking for a boy wearing a shirt similar to the one which Seals was wearing. When such advice was given him, Seals turned over the plaid shirt to Middleton, alias Millender, who then loaned Seals a shirt.

The testimony of Middleton, alias Millender, was admitted without error. Any indication of a consciousness of guilt by a person suspected of or charged with a crime or who may, after such indications, be suspected or charged is admissible evidence against him. McAdory v. State, 62 Ala. 154.

In accordance with our duty in cases of this character, we have examined the record for any reversible error, whether pressed upon our attention or not. We have dealt herein with all questions calling for treatment. We find no reversible error in the record, therefore the cause is due to be affirmed. It is so ordered.

Affirmed.

STAKELY, GOODWYN and COLEMAN, JJ., concur.

MERRILL, Justice (concurring specially).

I concur in the result and in the opinion, except that I do not want to be understood as agreeing with or approving the following cases which are incidentally cited in the opinion: Beachem v. State, 144 Tex. C.R. 272, 162 S.W.2d 706, and State v. Taylor, 213 S.C. 330, 49 S.E.2d 289, 16. A.L.R.2d 1317.