**Alonzo Diego FULLER**

v.

**STATE of Texas.**

**No. 11–91–276–CR.**

Court of Appeals of Texas, Eastland.

May 20, 1993.

Rehearing Denied June 17, 1993.

Motion to Publish Granted July 15, 1993.

Discretionary Review Refused Oct. 20, 1993.

---

Stan Brown, Abilene, for appellant.

G. Lee Haney, Dist. Atty., Brownwood, for appellee.

## OPINION

McCLOUD, Chief Justice.

The jury convicted appellant, Alonzo Diego Fuller, of aggravated sexual assault, found the enhancement allegations to be true, and assessed appellant's punishment at confinement for 99 years. We affirm.

The victim was raped in her home on December 22, 1990, at approximately 11:00 p.m. by a man who apparently entered the house through an unlocked window.

Appellant urges in his first point of error that the evidence is insufficient to prove that he was the person who committed the aggravated sexual assault. In order to determine if the evidence is insufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991).

The victim was lying in bed when she saw the "silhouette" or body outline of a man enter her bedroom. The bedroom light was off, but a table lamp was on in the living room. The assailant put his hands over the victim's eyes and later put a pillowcase over her head. As the victim struggled with the assailant, she scratched the left side of his "face or body." At one point, the victim was able to see that the assailant was wearing dark pants and

white tennis shoes with blue trim. The victim saw her purse "dangling" from the assailant's arm, and she heard paper tearing.

Terrie Fuller, appellant's wife, testified that appellant came home between 11:00 and 11:30 p.m. on December 22. He was acting nervous, and he had a fresh scratch on the left side of his neck. Appellant was wearing tennis shoes and black jogging pants.

On January 4, 1991, during the search of appellant's house, Brownwood police officers found three torn-up checks in a wastebasket. Terrie Fuller told the officers that appellant had placed the checks in the basket. The victim identified the checks as coming from a checkbook that was in her purse at the time of the sexual assault. The officers also found a pair of tennis shoes which Terrie Fuller said belonged to appellant. The patterns on the soles of the shoes were consistent with the patterns of impressions found in the snow, immediately following the sexual assault, at a window outside the victim's house. The similarities included the word "Equipment" on the heel, the lug pattern on the heel, a concentric pattern and a star pattern at the ball of the foot, and a ridge pattern at the outside edge.

Appellant's blood test revealed that he was a blood group "A secretor" and that he had an "enzyme PGM subtype of 1 + 2 —." The victim's vaginal swab test showed that the assailant was a blood group "A secretor" who had a "PGM subtype of 1 + 2 —." The test findings were consistent with appellant's having been the assailant.

The trial court ordered appellant to repeat before the jury certain words that were said by the assailant during the sexual assault. The victim testified that appellant's voice was "[v]ery, very similar" to the voice of the assailant. The victim testified that appellant's blue and white tennis shoes appeared "similar" to the shoes worn by the assailant.

After reviewing all of the evidence in the light most favorable to the jury's verdict, we hold that the evidence is sufficient to support the jury's finding that appellant was the assailant. Appellant's first point of error is overruled. We have carefully reviewed the authorities cited by appellant, and each case is clearly distinguishable by the facts.

Appellant argues in his second point of error that the trial court erred in overruling his motion to suppress the items taken by the police during the search of appellant's home. Appellant specifically argues that the trial court violated his rights under TEX. CONST. art. I, § 9 and TEX.CODE CRIM.PRO.ANN. art. 38.23 (Vernon Supp. 1993).

■ On January 4, 1991, Terrie Fuller, appellant's wife, gave Brownwood Police Officer Jerry Randall Haskins written permission to search the trailer house occupied by appellant and Terrie Fuller. Haskins also secured a search warrant before searching appellant's trailer house.

The question of whether consent to search was voluntary is a question of fact to be determined from the totality of all the circumstances. *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr.App.1982). The testimony of Terrie Fuller and Haskins shows by clear and convincing evidence that the consent of Terrie Fuller was freely and voluntarily given. See *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985).

On January 4, 1991, Terrie Fuller was married to appellant, and she was living with appellant at the trailer house. Persons who have equal access to and control over premises have authority to authorize a search. *Swink v. State*, 617 S.W.2d 203 (Tex.Cr.App.1981). *May v. State*, 780 S.W.2d 866 (Tex.App.—Dallas 1989, pet'n ref'd), cited by appellant, is clearly distinguishable. There, an "estranged wife" who had several months before the search, moved from the house of the defendant and who was antagonistic to the defendant, gave officers permission to search the defendant's house. Furthermore, the evidence in *May* showed that the estranged wife was working with police officers to "set up" the defendant and have him arrested. There are no such facts in the

instant case. Appellant's second point of error is overruled.

In his third point of error, appellant asserts that the court should have granted his motion to suppress because the affidavit, upon which the search warrant was issued, totally failed to establish any reliability on the part of the informant. We disagree.

■ First, because of our holding that the consent to search was valid, there was no necessity that Haskins secure a search warrant. Nevertheless, we find that the affidavit sufficiently showed the reliability of Terrie Fuller, the informant. Haskins' affidavit contained sufficient "factual basis" for determining the reliability of Terrie Fuller. See *Johnson v. State*, 803 S.W.2d 272 (Tex.Cr.App.1990), *cert. den'd*, — U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Appellant's reliance on *Ware v. State*, 724 S.W.2d 38 (Tex.Cr.App.1986), is misplaced. There, the affidavit contained no "facts" regarding probable cause. Appellant's third point of error is overruled.

■ Appellant contends in the fourth point of error that the trial court violated appellant's rights under TEX. CONST. art. I, § 10 by compelling appellant to read, before the jury, certain statements or words attributed to the assailant.

Article I, section 10 provides that the accused "shall not be compelled to give evidence against himself."

The victim testified that, during the sexual assault, the assailant made certain statements. The trial court ordered appellant to repeat those statements before the jury. After hearing the appellant's voice, the victim testified that appellant's voice was very similar to the voice of the assailant.

The court in *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1969), stated:

After much study and research, we conclude that Article I, § 10, is declaratory of the common law, and that it was the intent of the framers of our constitutional privilege to provide the citizens of this state with a safeguard similar to that contained in the Fifth Amendment.

We adopt the view that the Texas constitutional self-incrimination privilege extends its protection to testimonial compulsion.

*Olson* expressly overruled *Beachem v. State*, 144 Tex.Crim. 272, 162 S.W.2d 706 (1942), which had held that it was a violation of Article I, section 10 to require a defendant to repeat certain words in order to assist a witness in identifying the defendant. Appellant cites *Heitman v. State*, 815 S.W.2d 681 (Tex.Cr.App.1991), and urges this court to return to the rule announced in *Beachem*. This we decline to do.

Judge John F. Onion, Jr., in writing for the court in *Olson*, reviewed in depth the historical basis and common-law interpretation of language identical and similar to the language contained in Article I, section 10. It is apparent that the court in *Olson* was making an independent State analysis and was not merely attempting to harmonize the State and Federal Constitutions. The *Olson* court said:

While federal constitutional safeguards applicable to the states do establish a minimum standard for state courts, such courts are not limited to those standards in construction of federal or state rights. They may go further and provide greater safeguards. As to the outer reaches of "due process" or "self-incrimination," we give great weight to the reasoning and holdings of the United States Supreme Court. Nevertheless, as to the true scope of the Texas Constitution, we must ultimately follow our own lights. "This approach is more desirable than simply second-guessing future supreme court decisions."

We disagree with appellant's statement in his brief that *Olson* overruled *Beachem* "on Fifth Amendment grounds."

We note with particular interest that the court in *Heitman* cited *Olson* for the statement that state courts are not limited to federal constitutional minimum standards in the "construction of state's rights." The Supreme Court of Texas in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex.1992), cited *Olson* for the statement that "as to the true

scope of the Texas Constitution, we must ultimately follow our own light."

The court in *Olson* made it very clear that compelling a voice exemplar does not constitute compelling an accused to "give evidence against himself" in violation of Article I, section 10. Appellant's fourth point of error is overruled.

Appellant asserts in his fifth point of error that the trial court erred in allowing the testimony of appellant's wife on behalf of the State absent any showing that the testimony was voluntary on her part.

■ TEX.R.CRIM.EVID. 504(2)(a) provides:

The spouse of the accused has a privilege not to be called as a witness for the state. This rule does not prohibit the spouse from testifying voluntarily for the state, even over objection by the accused.

There is nothing in the rule requiring the State to "prove that Terrie Fuller" was testifying voluntarily for the State. Terrie Fuller did not exercise her privilege "not to be called as a witness for the state." Also, the objection now urged was not the objection urged at trial. TEX.R.APP.P. 52(a); *Waldo v. State*, 746 S.W.2d 750 (Tex.Cr. App.1988). Furthermore, Terrie Fuller testified, "I'm doing this on my own free will." Appellant's fifth point of error is overruled.

■ In his last point of error, appellant argues that the trial court erred in not granting a mistrial when appellant's brother made a statement to a juror during a trial recess.

After the guilty verdict but before the punishment hearing, appellant's brother made the statement, "Put yourself in his shoes" to the juror, Deborah Andrews, while the juror was standing in the hallway of the courthouse. Andrews reported the incident to the bailiff who notified the trial court. The bailiff, outside the presence of the jury, testified regarding the incident. The bailiff stated that the other jurors were present when Andrews told the bailiff about the remark by appellant's brother. The trial court permitted appellant to take the stand for the limited purpose of explaining to the jury that he had nothing to do with the remark made by his brother. Appellant testified as follows:

Q: The bailiff had reported to me that certain things had been said to members of this jury panel.

A: Yes.

Q: I'll ask you further that it was reported to this—to me that this was done by your brother Mario, is that correct?

A: That is correct.

Q: I'll ask you, did you have anything to do with him making any suggestions or statements to this jury panel?

A: No, definitely not.

Q: Did you know that these statements were going to be made?

A: No.

Q: Did you ask him to make these statements?

A: No.

Q: As a matter of fact, when these statements were made, you were in consultation with your mother and I, is that correct?

A: That's correct.

Q: The first time you heard about these was when the bailiff reported them to me, is that correct?

A: Yes, sir.

Q: Is there anything else about this that you would like to tell the jury panel this morning?

A: All I want to say, I didn't have nothing to do with it. That's my brother's and I have no control over that. Just don't hold that against me. That's all I have to say.

Following appellant's explanation to the jury, the prosecutor requested the court to instruct the jury regarding the remarks made by appellant's brother. The court instructed the jury as follows:

THE COURT: All right. Members of the jury panel, you in your verdict in this case, as I've instructed you earlier, you are to consider only the testimony and the evidence presented to you here in open court, and nothing else.

You're to consider absolutely no other matters or statements or allegations

along those lines—on any lines whatsoever.

Your verdict must be rendered solely upon the testimony of live witnesses presented to you here in open court and possibly any exhibits that may be tendered by one party.

Again, your verdict in this phase of the case must be based strictly upon what you see and hear in this courtroom and nothing else. Is that sufficient, Counsel?

[PROSECUTOR]: And we would ask the Court to specifically instruct the jury to specifically disregard any statements that may have been made outside of the testimony.

THE COURT: The jury is so instructed. Anything that may have happened outside of this courtroom is not to be considered by this jury for any purposes whatsoever. All right.

[DEFENSE COUNSEL]: Your Honor, in that regard, I would ask that the Court further inform the jury that an investigation has been conducted this morning by me at my instance to determine whether or not my client had anything to do with the instances that took place.

And as of the present time, that there have been no evidence that he had any knowledge that it was going to take place or that it—or that it was taking place at the time it was done.

THE COURT: That is so noted by the Court. That is correct. We have made an investigation, there is absolutely no evidence whatsoever that this Defendant Alonzo Diego Fuller or his mother or any other member of his family was involved in this, it just appears to be a spontaneous situation on the part of one individual and that alone. Certainly, Mrs. Fuller who just walked in was certainly dismayed about the situation also. All right.

Is that sufficient, gentlemen? Anything else you would like to say?

[DEFENSE COUNSEL]: Once again, we would like to reurge our Motion.

THE COURT: Motion—Well, we will carry the Motion along, Counsel.

[DEFENSE COUNSEL]: Thank you.

After the court received the jury's verdict on punishment and sentenced appellant, the twelve jurors were questioned by appellant and the prosecutor regarding the remark and its effect upon the jury. Seven of the jurors, including Andrews, specifically stated that the remark had no effect upon their verdict. Five of the jurors were not specifically asked if the remark by appellant's brother had any effect upon their verdict.

Appellant argues that, since five of the jurors were not asked about the effect the remark had upon their verdict, the State failed to overcome the presumption of harm that occurs when an unauthorized person confers with a juror. The presumption is rebuttable. *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1978), *cert. den'd*, 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979); *Mayo v. State*, 708 S.W.2d 854 (Tex.Cr.App.1986). We hold that the State rebutted the presumption of harm. The court permitted appellant to testify before the jury and inform the jury that he had nothing to do with his brother's actions. The court carefully instructed the jury that appellant was not involved in the incident. Appellant's last point of error is overruled.

The judgment of the trial court is affirmed.