## WADE HAMPTON v. THE STATE.

### No. 3920. Decided February 2, 1916.

#### Rehearing denied March 1, 1916.

#### 1.—Murder—Special Venire—Challenge for Cause.

Where the clerk drew the name of J. Stam Davenport upon the special venire, but in the list served on defendant this name was written J. Stam Davis, the same would be ground for challenge but not to quash the venire; besides, this man did not serve on the jury, and there was no error in overruling the motion to quash the venire. Following Bowen v. State, 3 Texas Crim. App., 617, and other cases.

#### 2.—Same—Circumstantial Evidence—Money Found—Fruits of Crime.

Where, upon trial of murder, it appeared that at the time of the homicide the deceased had some small silver change and nickels on her person, there was no error in admitting in evidence that twenty years after the death of the deceased the witness plowed up in the back yard of the place occupied by defendant at the time of the homicide, and which had since not been occupied, some quarters, nickels and dimes, all of which were antedated to the death of the deceased.

#### 3.—Same—Evidence—Circumstances.

Upon trial of murder, there was no error in admitting testimony that on the day the deceased was killed the witness saw defendant's dog coming from the direction of the place of deceased and going towards defendant's house, it being shown that this dog was traveling in the same direction and near the place where the horse tracks which corresponded to the tracks of the horse owned by defendant, were discovered and traced, and also defendant's own tracks which were found in the smokehouse where the homicide occurred. Following Walker v. State, 7 Texas Crim. App., 245, and other cases.

#### 4.—Same—Evidence—Tracks.

Upon trial of murder, there was no error in admitting testimony that the witnesses had tracked a pony from near deceased's home to the back of defendant's field across the woods and into and through defendant's field up to tracks which were also found in the smokehouse where the homicide occurred. The fact that defendant was under arrest when his foot was measured is immaterial. Following Walker v. State, 7 Texas Crim. App., 245, and other cases.

#### 5.—Same—Evidence—Footprints.

Upon trial of murder, depending largely upon circumstantial evidence, there was no error in permitting a witness to testify that he saw near the body of the deceased a barefoot human track which compared favorably with tracks made by defendant and which the witness measured, but the stick with which measurements was made had since been lost. Following Cordes v. State, 54 Texas Crim. Rep., 234, and other cases.

#### 6.—Same—Measurements of Tracks—Evidence—Rule Stated.

If measurements were made of certain tracks shortly after the offense, it is not necessary to produce the stick or implement with which the tracks were measured, on the trial, before proof of result of the measurements is admissible in evidence; the witness can testify that he measured the tracks at that time and remembers that they corresponded. Following Weaver v. State, 46 Texas Crim. Rep., 607, and other cases.

#### 7.—Same—Rule Stated—Measurement of Tracks.

And even if the witness himself did not do the measuring, yet if he was with the person who did it and who testified to the measurement, the witness' testimony is admissible.

**8.—Same—Circumstantial Evidence—Fruits of Crime.**

Where, upon trial of murder, it appeared that the defendant was seen on the morning of the homicide and was wearing a pair of overalls and had on a shirt, which disappeared immediately after the homicide, and it was also shown that a severe struggle occurred when deceased was killed and that blood was found on the floor and walls of the smokehouse where the homicide occurred, which would indicate that the person who killed the deceased would doubtless have blood spattered on his clothing, there was no error in admitting testimony that at the time the witnesses sifted the ashes in defendant's fireplace they found overall buttons and some shirt buttons therein.

**9.—Same—Evidence—Confession—Husband and Wife—Privileged Communications.**

Upon trial of murder, there was no error in admitting in evidence the conversation between defendant and his wife, ten or twelve years after the murder, which was overheard by a third party and in which the defendant admitted the killing of the deceased with which he was charged by his wife. This was in no sense a privileged communication. Following Cole v. State, 51 Texas Crim. Rep., 89, and other cases.

**10.—Same—Reputation for Truth and Veracity—Testimony too Remote.**

Where, upon trial of murder, the defendant offered to prove that his witnesses knew the reputation of the State's witness who testified to defendant's confession up to some ten or twelve years before the trial and that the same was bad for truth and veracity, there was no error in excluding such testimony as being too remote, as the said State's witness had lived five or six years in the county of the prosecution prior to the trial and no attempt was made that during that time her reputation for truth and veracity was bad. Following Leach v. State, 78 Texas Crim. Rep., 55, 180 S. W. Rep., 122.

**11.—Same—Evidence—Conduct of Sheriff.**

Upon trial of murder, there was no error in refusing to permit the defendant to testify that since his arrest the sheriff had been allowing him to go at large, as the sheriff had no right to do so; besides, several witnesses testified to this fact.

**12.—Same—Sufficiency of the Evidence—Charge of Court.**

Where, upon trial of murder, the evidence was sufficient to sustain the conviction, there was no error in the court's refusal to instruct the jury peremptorily to acquit.

**13.—Same—Evidence—Explanation—Harmless Error.**

Where, upon trial of murder, the officer who arrested the defendant shortly after the homicide testified that he found some scratched places on defendant's arm and that his hat was slightly burned or scorched which, with other testimony, tended to show that the burned place on the hat when scraped showed evidence of blood having been thereon, etc., the court should have admitted in evidence defendant's explanation at the time as to why the scratches were on his arm and how his hat got burned, but inasmuch as the defendant was permitted himself to make this explanation without question, the same was harmless error.

**14.—Same—Bills of Exception—Bystander's Bill—Practice on Appeal.**

Where the lower court declined to approve certain bills of exception on the ground that they were incorrect and no bystander's bill was secured, the same can not be considered on appeal, in the absence of some proof that the bills of exception were not correct.

Appeal from the District Court of Franklin. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*T. C. Hutchings,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of special venire: Melton v. State, 71 Texas Crim. Rep., 130; Swofford v. State, 3 Texas Crim. App., 76; Thompson v. State, 19 id., 593, and cases cited in opinion.

On question of circumstantial evidence: Noftsinger v. State, 7 Texas Crim. App., 301; Kugadt v. State, 38 Texas Crim. Rep., 681; Wilganoski v. State, recently decided.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at ninety-nine years confinement in the State penitentiary.

Mrs. Talitha Caroline Casey was murdered and her body crowded into a box in her smoke house October 12, 1891. Appellant was arrested the next day and placed in jail. The grand jury failed to indict him, and he was released. In 1914, twenty-three years after Mrs. Casey was murdered, additional testimony was discovered, and the grand jury of Franklin County, November 4, 1914, returned an indictment charging appellant with the crime. Thereafter he was arrested in Marion County, where he had been since he was released from jail in 1891. The evidence shows beyond a shadow of doubt that Mrs. Casey was brutally murdered,—her throat being cut, and other wounds inflicted. There were evidences that a severe struggle occurred and she had fought for her life, but to no avail.

The first two bills in the record complain that the court erred in not permitting appellant to withdraw his announcement of ready and in not quashing the venire drawn. The ground relied on is that in drawing the venire the clerk drew the name of J. Stam Davenport, but in the list served on appellant this name was written J. Stam Davis. This would be good ground for challenge to this juror when called, but a clerical error of this character would be no ground to quash the venire drawn, and the court did not err in overruling the motion to quash the venire. Apparently the court sustained the challenge to the juror, for it does not appear that he served on the jury. Bowen v. State, 3 Texas Crim. App., 617; Mitchell v. State, 36 Texas Crim. Rep., 278, and cases cited.

Bills of exception Nos. 3 and 4 show that Aaron Brown was permitted to testify, "that twenty years after the death of Mrs. Casey he plowed up in the back yard of the place occupied by defendant in 1891 some quarters, nickels and dimes; that the dates on these coins show they were minted in 1855, 1859, 1868, 1876, 1877, 1887, and 1888, all prior to the death of Mrs. Casey." The court did not err

in admitting this testimony, for the evidence shows that at the time of the death of Mrs. Cascy she had in her purse '(which was in her pocket) $4.30, all in small change—no greenbacks. That in the box where she was found, and loose in her clothing at the time of her death, only 85 cents was found,—the remainder of the money being missed. It was further shown that appellant lived at the place where the money was found at the time of the death of Mrs. Casey; that he immediately left, and no other person had occupied that place until this money was plowed up; that it bore evidence of having been buried for a long time, it being corroded and black. Under such circumstances the evidence was admissible, that the jury might determine from all the evidence whether or not this was the money taken from Mrs. Casey at the time she was killed. The court, in approving the bill, states: "I admitted the coins because they were found in the back yard of defendant, who was the last person who lived on the place up to the time these coins were plowed up. The evidence shows that the deceased, Mrs. Casey, had such coin at the time she was murdered and all the coin bore date prior to the time of Mrs. Casey's death, and it was admitted as a circumstance for the jury to consider."

In the next bill it is stated that Marion Ravine was permitted to testify, that on the day Mrs. Casey was killed he saw appellant's dog about 1 o'clock coming from the direction of Mrs. Casey's and going towards defendant's house. If this was all the testimony it would be slight, if any, evidence that appellant also traveled along this way about this time, for Ravine does not claim to have seen appellant on that occasion. But this is not all the evidence. A man's barefoot track was found in the smoke house, full of blood, and so clotted that the track could be dug out. Not far from this smoke house it was found where a horse with a small foot had been hitched; the track of this horse was followed to where it jumped a fence into appellant's field, and a man's barefoot track was there found, which corresponded with the track found in the smoke house by the dead body of Mrs. Casey. The horse's track was then traced through appellant's field into his lot. The track made by appellant's gray horse found in the lot was measured, and it corresponded with the tracks found where the horse was hitched near Mrs. Casey's house and traced from that point to the place where the fence had been partially taken down and the horse jumped over the remainder, and with the horse track leading from this place to appellant's lot. The dog of appellant the witness was permitted to testify about seeing was traveling in the same direction and near the place where the horse's tracks were discovered and traced. This rendered the testimony admissible, and especially is this true when the track that was dug up in the smoke house was fitted to appellant's foot. The fact that appellant was under arrest when this track was fitted to his foot would not render such evidence inadmissible. Walker v. State, 7 Texas Crim. App., 245; Guerrero v. State, 46 Texas Crim. Rep., 445; Meyers v. State, 14 Texas Crim. App., 35;

Thompson v. State, 45 Texas Crim. Rep., 190; Squires v. State, 54 S. W. Rep., 770.

The evidence of the witnesses that they "tracked a pony from near deceased's home to the back of defendant's field across the woods and into and through defendant's field up to the back of his lot" was clearly admissible under all the authorities, and the bills complaining of this matter present no error. Goldsmith v. State, 32 Texas Crim. Rep., 112; Parker v. State, 46 Texas Crim. Rep., 461. Especially in this case is the testimony admissible, as the record shows the foot of appellant's gray horse found in. his lot was measured and shown to have fitted the tracks leading from near where the deceased's body was found to appellant's lot. Of course this does not conclusively prove appellant was riding the horse on this occasion, yet it is a circumstance tending to connect him with the offense. And as a confession of appellant is testified to by another witness, all these circumstances are admissible in evidence tending to support and show the truth of the confession.

Appellant also objected to Marion Ravine being permitted to testify that he saw in the smoke house, near the body of deceased, a barefooted human track, which looked to be a grown man's track, and it appeared to be the same kind of track as that he saw in defendant's field where the horse jumped the back fence; and objected to the testimony of Bill Stokes that he saw the human tracks inside the field near the fence, and they compared favorably with tracks made by defendant. Many and numerous objections were urged to this testimony, but inasmuch as Stokes testified he measured the tracks and compared them, and by comparison it was his opinion it was the same track, this testimony was properly admitted. It is true he says, "The soil was very loose sand and a correct measurement would be hard to get. We could not get it absolutely correct, but we did the best we could." He also says, "We measured the pony's tracks and compared them with the tracks found and they corresponded very well"; that he gave the measurements to Mr. Langston, who in 1891 was sheriff of the county, and he did not know where they now are. As said in Cordes v. State, 54 Texas Crim. Rep., 204, "if measurements were made at the time, it is not necessary to produce the stick with which the tracks were measured, on the trial, before proof of result of the measurements is admissible." It would be rather remarkable if the measurements made at the time, twenty-four years ago, had been preserved, but a witness can testify he measured the tracks at that time and remembers they corresponded. Weaver v. State, 46 Texas Crim. Rep., 607; McLain v. State, 30 Texas Crim. App., 482; Goldsmith v. State, 32 Texas Crim. Rep., 112; Thompson v. State, 45 Texas Crim. Rep., 190; Meyers v. State, 14 Texas Crim. App., 35; Weaver v. State, 43 Texas Crim. Rep., 340. While it is true Mr. Ravine himself did not do the measuring or any measuring, he was with Mr. Stokes, who did the measuring, and after Mr. Stokes had testified to the measurements the testimony of Mr. Ravine, as well as that of himself, became admissible.

Appellant objected to witnesses being permitted to testify that they at the time "sifted the ashes in defendant's fireplace and found a set of buttons which were overall buttons, and a set of shirt buttons, less one." Witnesses who saw appellant on the morning of the homicide testify that he was wearing a pair of overalls, and had on a shirt. When arrested the day after the homicide appellant had on a pair of dark pants and a new shirt. His place was searched for a pair of overalls and none could be found, when the ashes in the fireplace were sifted and these buttons found. Witnesses testified Mrs. Casey was found in a box in the smoke house. "Her throat was slashed on both sides, and, as well as I remember, hung down this way (indicating) and one arm or both arms and hands were cut pretty severely. I observed the other conditions in the smoke house. There had been a terrible fight put up in there. It was a dirt floor and the ground was all scarred up from the footprints, you know, on the floor; the walls, too, had blood on them and there was a general disorder of things in there—all torn up, you know—which indicated that there had been a considerable struggle." This testimony would indicate that the person who killed Mrs. Casey doubtless would have blood spattered on his clothing, and it was permissible to prove that the overalls appellant had on that day could not be found, and that a set of buttons of a pair of overalls was found in the ashes in the fireplace. This would lead to and authorize the inference that a pair of overalls and shirt had been probably burned in the fireplace but a short time prior to the discovery of the buttons.

Susan Davis testified: "That about ten or twelve years ago, while she was visiting the defendant and his wife, Martha Hampton, near Jefferson, Marion County, Texas, she heard a conversation between defendant and his wife at the time they were in a row, in which conversation witness testified that defendant's wife, Martha Hampton, told defendant that he had killed Mrs. Casey, deceased; that she knew it and that he knew at the time that she knew it, and that if he had his just dues he would have been hanged long ago, and that he knew he tried to get her to go with him and pretend that they were buying syrup from the deceased and help him kill her, and that he came home with bloody clothes and admitted he killed deceased and asked her, Martha Hampton, not to give him away, and that defendant in reply to said statement made by his wife, stated that he did kill Mrs. Casey, but if he did so his wife and her folks could not prove it on him, and had not been able to have him hanged, and that said Martha Hampton used sundry epithets to and concerning defendant." Appellant objected to this testimony on the ground that it was a privileged communication, and that as the wife could not be made to testify against her husband, the testimony was inadmissible, hearsay, etc. The court committed no error in admitting the testimony. When third persons hear a conversation between the husband and wife, such person can testify as to what was said, if the testimony is material to the case on trial. Cole v. State, 51 Texas Crim. Rep., 93; Richards v. State, 55

Texas Crim. Rep., 280, and cases cited. This was in no sense a privi-leged communication, but was a charge made by the wife, in the pres-ence of others, that appellant killed Mrs. Casey, and according to the witness, he not only did not deny it but admitted he did so.

In bills Nos. 16 and 17 it is shown that appellant offered to prove by J. A. Dozier and others that they knew the witness Susan Davis up to some ten or twelve years before the trial, and her reputation for truth and veracity at that time was bad. The court sustained an ob-jection to the testimony, and in approving the bills states as his reason for doing so: "This testimony was excluded because I believed it too remote. The testimony showed that the witness Susan Davis had lived five or six years in Hunt County, Texas, prior to this trial and de-fendant did not attempt to show that her reputation for truth and veracity was bad there and did not attempt to show that her repu-tation for truth or veracity had been bad for twelve or fifteen years prior to this trial." As thus qualified the bill presents no error. (Leach v. State, 180 S. W. Rep., 122.) Had appellant offered to prove by other witnesses that her reputation, at the time of the trial and shortly prior thereto, for truth and veracity was bad, then all the above testi-mony would have been admissible. But, as the court says, appellant did not offer to prove the reputation of the witness for any time for twelve years immediately preceding the time she testified, we can not say he erred in holding it too remote.

There was no error in refusing to permit appellant to testify that since his arrest the sheriff had been allowing him to go at large. The sheriff had no right to do so, if he did; and if such testimony was ad-missible it is apparent and the jury was informed that the sheriff did permit him to go at large, for such fact is sworn to by several witnesses as shown by this record.

There was no error in refusing the charge asking the court to in-struct the jury peremptorily to acquit. The evidence, and all the evi-dence, will support a verdict of guilty.

There are two other bills in the record, and we are of the opinion they both present no error. In bill No. 10 it is shown that Mr. Stokes while testifying stated when he arrested appellant in 1891, he found "some scratched places on defendant's arm" and his hat was "slightly burned or scorched." The State introduced these circumstances, with other testimony, that the burned place on the hat, when scraped, showed evidence of blood having been on the hat, as evidence tending to prove his guilt. Appellant desired to prove by Mr. Stokes the explanation he gave at the time as to why the scratches were on his arm and how his hat got burned. The court should have admitted this testimony. The statement was made contemporaneous with finding the scratches on the arm and the burnt place on the hat. The record shows that the court did permit the witness to testify: "The defendant explained how the scratches came to be on his arm," etc. As before stated, the court should have permitted the witness to state the explanations in full, but

inasmuch as he did not do so, but did permit appellant to testify, "I heard Mr. Stokes tell about the scratch on my arm; I guess that was made by me fighting with them big yearling calves in the lot; I expect that is how come that. In that day and time I mostly goes with my sleeves rolled up. I was covering a little house at that time and it might have been done up on the house. It was just a little scratch on the arm. I heard them talking about the burnt places on my hat. My little kid that morning—I don't know, but I think we were eating breakfast, but my hat was lying in a chair or maybe on an old stool bench, and the kid picks the hat up and throws it in the fire, and Martha hadn't raked up the embers where she had been cooking with skillets. We had big skillets in that day and time. That is how come them burnt places on the hat, them cinders had burnt the hat and it is a wonder they hadn't burnt it up. I testified that to those white men in regards to that hat. It has been a long time, but I testified to that," no reversible error is presented. This shows the explanation got in evidence before the jury, and as the State did not cross-examine him on that explanation, nor seek in any way to question that it was the explanation he gave to Mr. Stokes at the time of his first arrest, and is the same explanation that the bills say Mr. Stokes would have testified to, we do not feel authorized to reverse the case because Mr. Stokes was not permitted to so testify. If the explanation had not been in evidence, or if the State had questioned it was not the explanation he gave at the time, we would view the matter differently. But as the explanation was before the jury, and it was unquestioned it was the explanation he gave at the time, the bills do not present reversible error.

These are all the bills in the record, but to an affidavit filed by appellant's counsel there is attached five other bills, each of which is marked, "I decline to approve this bill of exception because in my opinion it is not correct. (Signed) H. F. O'Neal, Judge." As the court declines to approve the bills, on the ground they are incorrect, we can not consider them. Under the state of facts as sworn to by appellant, had he proven up these bills by bystanders we would consider them, even though filed subsequent to the time allowed to file bills. But with no proof offered that the bills present questions raised on the trial, we are not authorized to review them. The fact must be evidenced in some way that the bills correctly present the exception reserved, and that the exception was reserved during the trial of the case at the proper time. The court says no such bills of exception were reserved. Appellant offers no proof that they were reserved, or the matters complained of in them occurred. It is true appellant swears he presented the bills to the court and asked that they be allowed at the same time he presented the other bills; that in returning the bills these five were returned unsigned, when he filed the others and sent these five back to the court for his signature; that the court kept them for some time and then returned them, declining to approve them for the reasons stated. If appellant expected us to consider them, he should have

attached to them some proof of their correctness as provided by statute. In the absence of such proof they can not be considered.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE, not present at consultation.

[Rehearing denied March 1, 1916.—Reporter.]