

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 16, 1947

Hon. Fred Red Harris
Hon. Joe Kilgore
Free Conference Committee
Texas Senate and House
Austin, Texas

Opinion No. V-202

Re: Constitutionality of
Senate Bill No. 172
and House Bill No.
140, known as the
"Uniform Act Regu-
lating Traffic on
Highways."

Dear Sirs:

Your request for an opinion on the constitu-
tionality of Senate Bill No. 172 and House Bill No. 140
reads, in part, as follows:

"Because of the bill's far reaching im-
portance, it is our wish that the free con-
ference committee be advised by the Attorney
General on the constitutionality of this bill
together with such recommendations, which in
your opinion, may be necessary to assure the
legality of the bill.

"I particularly wish to inquire as to
the constitutionality of Article V of S.B.
172 and whether or not, in your opinion, Sec-
tion 52-A, which relates to scientific test-
ing to determine whether or not a defendant
is under the influence of intoxicating liq-
uor, will be held constitutional."

The bill in question is one regulating traffic
and travel upon the highways of this State. It is very
comprehensive in its nature and scope, and consists of
one hundred and seventy-four separate sections. Not
only does the bill repeal all laws and parts of laws in-
consistent or conflicting with the provisions of the
proposed enactment, but it adds many new and different
provisions to the now existing "Law of the Road" as em-
braced in Article 801, Vernon's Penal Code.

We have devoted considerable time and study
to the bill because it involves the grave and serious
problem of regulating in detail the traffic on our

highways, and the concomitant problem of the need for safeguards and restrictions for those who use and go upon our highways. We are not permitted to go further than to discuss and decide questions relating to the constitutionality of certain portions of the bill. The Constitution of this State confides to the Legislature the right and power to express by written statute the public policy of the State, and what may or may not be done by a person in a given case. For this reason we express no opinion either for or against the policy embraced in the bill, and nothing herein is to be construed as an expression of approval or disapproval on our part as to the policy embraced in the bill as a whole or any part thereof.

It is well established that the regulation of highways, and the use thereof, is within the police power of the State. Ex Parte Savage, 63 Crim. Rep. 285 (Tex. Crim. App. 1911); Jones v. Brim, 165 U. S. 180, 41 L.Ed. 677, 17 Sup. Ct. 282 (1897); Davis v. Massachusetts, 167 U. S. 43, 42 L. Ed. 71, 17 Sup. Ct. 731 (1897); Sproles v. Binford, 286 U. S. 397, 76 L. Ed. 1167, 52 Sup. Ct. 581 (1931). From these authorities, and numerous others, there is no question but that the Legislature is within its constitutional authority in dealing with the subject embraced in the bill.

The constitutional questions presented relate to specific sections of the bill. In this connection, we are not unmindful of the fact that Section 172 of the bill specifically provides that "if any part or parts of this Act shall be held to be unconstitutional, such unconstitutionality shall not affect the validity of the remaining parts of this Act." Such a savings clause is valid and will be enforced by the courts. Atkins v. State Highway Department, 201 S.W. 226 (Tex. Civ. App. 1918). Even in the absence of such a savings clause, it is elementary that a statute will always be sustained as to portions which are not unconstitutional unless the unconstitutional portions are so intermingled with the remaining portions of the statute that they cannot be severed. State v. Humble Pipe Line Co., 112 Tex. 375, 247 S.W. 1082 (1923). Such a problem of intermingling is not presented by the bill under consideration.

The first question presented is whether or not a subject is embraced in some of the provisions of the bill which is not expressed in the title.

Article III, Section 35, Constitution of Texas, provides as follows:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

It has been declared in numerous cases that this section of the Constitution is mandatory, but that it will be liberally construed, State v. The Praetorions, 186 S.W. (2d) 973 (Sup. Ct. 1945), and if a section of an act is in any degree germane to the subject expressed in the title, it will be upheld. Davis v. State, 225 S.W. 532 (Tex. Crim. App. 1920).

The title to the bill in question reads as follows:

"An Act regulating traffic, or travel upon the highways of the State of Texas; prescribing penalties for the violation of the provisions of this Act; containing a savings clause; and declaring an emergency."

Certainly there is but one subject embraced within the title, and it therefore meets the constitutional requirement in this regard. On the other hand, it is extremely doubtful as to whether the subject named in the title is the only subject dealt with in certain sections of the bill itself. Our doubt is expressed with reference to Section 49, relating to the nonuse of accident reports as evidence in civil and criminal actions; Section 114(b), relating to the cancellation of contracts for the operation of a school bus; Section 142, relating to the sale of certain automotive equipment which has not been approved by the Director of the Department of Public Safety; Sections 143 and 144, relating to the approval of certain automotive equipment by the Director of the Department of Public Safety and revocation of the authority to sell such equipment; and Section 166, relating to the admissibility of evidence in civil actions.

It is elementary that no act, or section thereof, will be held unconstitutional merely because doubt is expressed as to its validity. Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488 (Sup. Ct. 1903). On the contrary, where the court is in serious doubt as to whether the Legislature exceeded its power by embracing more than one subject in an act, such doubt is to be resolved in favor of the validity of the act, and not against it. Altgelt v. Gutzeit, 175 S.W. 220 (Tex. Civ. App. 1916). As was observed by the court in this last cited authority, it is extremely difficult to determine in many cases whether there is the required connection between subjects in an act so as to meet the constitutional requirement, and we regard the above mentioned sections as examples of such cases.

In view of the fact, however, that we do have a serious doubt on the question under discussion, we think it is our duty to call this to your attention in order that you may take such action as you deem necessary to eliminate the doubtful features suggested while the bill is still before you in a conference committee.

The second, and more serious question presented, relates to Section 52 of the bill in question. It provides as follows:

"(a) In any criminal prosecution for a violation of Articles 802, 802A, 802B, Texas Penal Code, Revised Statutes, 1925, as amended, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions:

"1. If there was at that time 0.05 per cent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"2. If there was at that time in excess of 0.05 per cent but less than 0.15 per cent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent

evidence in determining the guilt or innocence
of the defendant;

"3. If there was at that time 0.15 per
cent or more by weight of alcohol in the de-
fendant's blood, it shall be presumed that the
defendant was under the influence of intoxi-
cating liquor.

"4. The foregoing provisions of this
subdivision shall not be construed as limit-
ing the introduction of any other competent
evidence bearing upon the question whether or
not the defendant was under the influence of
intoxicating liquor."

This section squarely presents the question
of whether or not the use of scientific methods to de-
termine intoxication in cases involving driving while
intoxicated is in violation of Article I, Section 10
of the Constitution of Texas.

Article I, Section 10 of the Constitution of
Texas, provides in part as follows:

"In all criminal prosecutions the ac-
cused shall have a speedy public trial by
an impartial jury.. . . He shall not be
compelled to give evidence against him-
self. . ."

It is to be observed that nothing is contained
in Section 52 indicating that the scientific tests men-
tioned are to be given and used only with the consent of
the accused. Inasmuch as we are of the opinion that the
accused could consent to such tests, and the use of same
against him, without violating the above quoted consti-
tutional provision, we will discuss the question from
the standpoint that it is the intention of the Legisla-
ture to provide for such tests, and their use, without
the consent of the accused. This has been the position
of the National Safety Council in sponsoring such pro-
visions in different States, and the above quoted sec-
tion is almost identical with its recommendations in
this regard. See 24 Iowa Law Review 191 (1939); also,
Mimeographed Reports of National Safety Council, "Com-
mittee on Tests for Intoxication." 1938.

Much has been written by the courts of this country, as well as by different legal scholars, on the subject of whether or not statutes authorizing the testing of blood, urine, and breath for the purpose of determining intoxication, and the introduction in evidence of the results of such tests, violate the constitution privilege against self incrimination. The Constitution of forty-six States, and that of the United States, contains a provision similar to the one above quoted from the Constitution of Texas. There are decisions in the different jurisdictions on both sides of the issue.

Professor Wigmore takes the position that the privilege against self incrimination covers only statements made by the defendant in open court under process as a witness. Wigmore on Evidence, Third Edition, § 2263. There are decisions in some jurisdictions other than Texas in accord with Wigmore. On the other hand, Jones in his "Commentaries on Evidence," Second Edition, § 1391, takes a position contrary to that of Wigmore, and states that an accused should not be forced to submit to an examination or physical scientific tests. There are numerous decisions in accord with this view. The State of Missouri has gone so far as to say that such tests cannot be used in evidence against the accused even though he consents to the test.

The criticism of the rule against the use of scientific evidence gained as a result of blood, urine, and breath tests has been severe. See 23 Iowa Law Review 57 (1938); 24 Iowa Law Review 191 (1939); Grossman "Some Reasons for the Growing Disrespect for the Law" (1911), 1 J. Crim. L. & Crimin. 968, 969; and Stevens, "Archaic Constitutional Provisions Protecting the Accused," (1914) 5 J. Crim. L. & Crimin. 16. It has not escaped comment by the American Bar Association. See American Bar Ass'n. Journal, December 1935, XXI, 808.

Regardless of which of the above two views is correct, the courts of Texas have made it clear that evidence gained by the method authorized in Section 52 without the consent of the accused and against his wishes is not admissible in evidence against him, and a statute authorizing such a procedure would be in violation of Article I, Section 10 of the Constitution. A discussion of the decision reached in each of the two more recent and leading cases on this subject will be helpful in an understanding of the basis of the Texas rule.

In Apodaca v. State, 146 S.W. (2d) 381 (Tex. Crim. App. 1940), the defendant, after arrest, was required by the officers to submit to certain tests for the purpose of enabling them to determine whether he was intoxicated. He was required to walk and make sudden turns, and was also required to give a specimen of urine to be analyzed for the purpose of determining whether alcohol was present. The results of these tests were placed in evidence. In holding that this violated Article I, Section 10, Constitution of Texas, the court said:

"We quote from 16 Corpus Juris, page 566, as follows: 'The constitutions of the United States and of most of the states provide in somewhat varying language that no person accused of crime shall be compelled to be a witness, or to give evidence, against himself, and these provisions render inadmissible all evidence incriminating accused and obtained from him by compulsion. The prototype of the guaranty is found in the maxim of the common law, Nemo tenetur seipsum accusare, which was brought to America by our ancestors as a part of their birthright; and the privilege against self-incrimination has been uniformly construed by the courts as giving the citizen protection as broad as that afforded by the common-law principle from which it is derived, both the federal and state constitutions being liberally construed to prevent compulsory self-incrimination. Compulsion is the keynote of the prohibition; and to render evidence inadmissible on the ground that defendant was compelled to produce it against himself, it must appear that such compulsion was used as to rob him of volition in the matter.'

"The following is taken from 28 Ruling Case Law, supra, page 434: 'The rights intended to be protected by the constitutional provision that no man accused of crime shall be compelled to be a witness against himself are so sacred, and the pressure toward their relaxation so great when the suspicion of guilt is strong and the evidence obscure, that it is the duty of courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion. Hence, there is the well-

Hon. Fred Red Harris - Page 8, V-202

established doctrine that the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to hold secret.'

The State's attorney filed an able motion for rehearing challenging the conclusion reached. In over-ruling this motion the court said:

"We have re-examined the record in the light of the State's motion, and are inclined to adhere to the conclusions heretofore announced.

"We think the safer policy to be adherence to the construction and application of Section 10, Article 1 of our Constitution already given effect in our long-established precedents."

Two years later the matter was again before the court in Beachem v. State, 162 S.W. (2d) 706 (Tex. Crim. App. 1942). In view of apparent conflict in some of the cases, and because of certain exceptions the court had made to its holdings under Article I, Section 10 of the Constitution, the court speaking through Judge Davidson, wrote at length on the subject. In reviewing the cases, and in stating the rule of the court, it was said:

"While this constitutional provision prohibits compelling an accused to give evidence against himself, its application is in no wise limited strictly to the giving of such evidence upon the trial of the case. To the contrary, the inhibition extends and applies whenever one is under arrest for a violation of the law or is being held by the authorities investigating a charge against him. It stands as a guarantee to everyone of the right to refrain from giving testimony which will tend to reveal his criminal connection with an offense denounced by law. 44 Tex. Jur., § 25.

"    .   .   .

"Much has been said by this Court touching the question of what constitutes self-incrimination within the meaning of the constitutional provision, and apparent conflicts appear. The various holdings are based upon, and, of necessity, arise by, what are construed to be, exceptions to the application of the constitutional inhibition. Among those exceptions are, what are known as, the 'footprint' cases, wherein identification was established by a comparison of footprints (Walker v. State, 7 Tex. App. 245, 32 Am. Rep. 595; Pitts v. State, 60 Tex. Cr. R. 524, 132 S.W. 801; Hampton v. State, 78 Tex. Cr. R. 639, 183 S.W. 887; Rippey v. State, 86 Tex. Cr. R. 539, 219 S.W. 463; Lunsford v. State, 80 Tex. Cr. R. 413, 190 S.W. 157; Johnson v. State, 91 Tex. Cr. R. 291, 238 S.W. 933; Landry v. State, 117 Tex. Cr. R. 396, 35 S.W. 2d 433); also, the 'fingerprint' cases, to the same effect (McGarry v. State, 82 Tex. Cr. R. 597, 200 S.W. 527; and Conners v. State, 134 Tex. Cr. R. 278, 115 S.W. 2d 681), wherein the accused was required to give his fingerprints; also, cases involving identification by personal appearance or physical examination (Land v. State, 34 Tex. Cr. R. 330, 30 S.W. 788; Bruce v. State, 31 Tex. Cr. R. 590, 21 S. W. 681; Thompson v. State, 90 Tex. Cr. R. 15, 234 S.W. 401; Rutherford v. State, 135 Tex. Cr. R. 530, 121 S.W. 2d 342; and Ash v. State, 139 Tex. Cr. R. 420, 141 S.W. 2d 341.

"The basic and underlying principle upon which these exceptions to the application of the constitutional inhibition mentioned are founded lies in the fact that the evidence there involved was not produced by the accused, that is, by the independent act or volition of the accused, but was produced by, and was the result of, the acts of the officers or others. It follows, therefore, in the instant case, that, unless the evidence here complained of was admissible as an exception, that is, as having been produced by the officers as distinguished from having been produced by the accused, it comes within the constitutional inhibition mentioned. The determining factor in this case is whether the evidence which incriminates the accused was produced by him or by the officers.

"While not expressly so stated in the
opinion, the application of the principle stat-
ed controlled in the disposition made in the
case of Apodaca v. State, 140 Tex. Cr. R. 593,
146 S.W. 2d 381. . . ."

Based upon the above decisions, it is our opin-
ion that if Section 52 be construed as mandatory in re-
quiring a person to submit to scientific tests against
his consent for the purpose of determining intoxication,
and the use of the results of such tests against him,
it would violate Section 10 of Article I of the Consti-
tution of Texas.

Even though the section should be construed to
apply only in cases where the accused has consented,
there are several problems obviously present that the
Legislature should consider. These problems are: (1)
The possibility of an intoxicated person to consent--
the degree of intoxication beyond which he is not ca-
pable of consenting; (2) The question of the need of
warning the accused of his rights and of the purpose of
the tests; (3) The standard to be applied in determining
whether consent has been given; and (4) The issue by
whom consent is to be determined in the trial of the
accused--by the court in passing on a question of law
as to the admissibility of evidence or by the jury as an
issue of fact.

Aside from the question of self incrimination,
it is to be observed that paragraph 3 of Section 52 states
that if there is 0.15 per cent or more by weight of al-
cohol in the defendant's blood, it shall be presumed that
the defendant was intoxicated (Emphasis ours). Paragraph
4 of Section 52 states that the other provisions of the
section shall not be construed as limiting the introduc-
tion of other competent evidence bearing upon the ques-
tion of intoxication. This obviously shows an intention
on the part of the Legislature that paragraph 3 does not
mean that it shall be conclusive proof that the accused
was intoxicated under the conditions therein stated, but
it is our opinion that it perhaps would be better to use
the words "prima facie evidence" instead of the word "pre-
sumed." See Newton v. State, 267 S.W. 272 (Tex. Crim.
App. 1924); Floeck v. State, 30 S.W. 794 (Tex. Crim. App.
1895). The suggested change eliminates the constitutional
question of denying an accused the right to a trial by
jury in a criminal case.

The third question presented relates to the power and authority of the State to regulate the use and operation of vehicles on private property.

Section 21 of the bill provides that "the provisions of this act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except . . . the provisions of Articles IV and V shall apply upon highways and elsewhere throughout the State." (Emphasis ours)

Article IV (Section 38 to 51, inclusive) in general deals with accidents by motor vehicles involving death or personal injury and reports thereon. Article V (Sections 52 to 54, inclusive) in general deals with driving while intoxicated and reckless driving.

To illustrate the problem presented, in the event a farmer, who is driving his own vehicle on his own farm or ranch, collides with another vehicle owned by him, and driven by his employee, thereby causing damage to one or both of the vehicles, he is required under the terms of the bill to comply with the provisions of Article IV with reference to reporting accidents to the Department of Public Safety. To this extent the issue of the right of the State to regulate the driving and use of vehicles on private property is presented.

We have been unable to locate any authority specifically answering the question as to the power of the State to regulate the use of vehicles on private property. In Crossler v. Safeway Stores, 6 P. (2d) 151 (Idaho Sup. Ct. 1932), the court upheld a city ordinance making it unlawful for a person to ride on the running board of a vehicle, in a private driveway. The reasoning of the court was to the effect that the private driveway was a road within the meaning of the ordinance, and was being used by the public. The court quoted from Commonwealth v. Gammons, 23 Pick. 201 (Sup. Ct. Mass.) wherein it was said:

> "It is argued, that such a construction will trench upon the rights of private property, and the legislature have no power to prescribe the rules, by which individuals shall be governed, in the use of private property. But we think this rule does not impair the rights of private property; it confers no right of way, in the lands of private owners. They

may exclude all persons, if they think fit.
But when those owners, by grant or permission
or general license, express or implied, do
allow their land to be used for a road, the
legislature, having a superintending power over
the persons and conduct of all the citizens,
may prescribe a rule by which they shall use
this privilege, whether permanent or temporary,
for their mutual safety and convenience."

It is not believed that the above cited and
quoted authorities are decisive of the question presented,
unless it is assumed that the accident referred to in
our illustration occurred on a private road which was
from time to time used by the public. For this reason,
we at least express doubt as to the validity of the sec-
tions here under consideration in so far as they attempt
to regulate situations similar to those in our illustra-
tion as an entrenchment upon the rights and use of pri-
vate property. As previously observed, mere doubt is
not sufficient to hold a statute unconstitutional, but
we call the matter to your attention for the reasons
heretofore stated in this opinion.

The fourth and last question presented calls
for a determination of whether certain sections of the
bill violate that portion of Article I, Section 10 of
the Constitution which provides as follows:

"In all criminal prosecutions the ac-
cused shall have a speedy public trial by
an impartial jury. <u>He shall have the right
to demand the nature and cause of the ac-
cusation against him</u> . . ." (Emphasis ours)

Article 6, Vernon's Penal Code, provides, among
other things, that the penal law, to be valid, must be
so definitely framed that the accused may know the nature
of the accusation against him, and unless it meets this
requirement, it is invalid.

The well recognized rule for construing a penal
statute is, that if the statute is so indefinitely drawn,
or if it is of such doubtful construction that it cannot
be understood, either from the language in which it is
expressed or from some written law of the State, it is
invalid and void. <u>Ex Parte Meadows</u>, 109 S.W. (2d) 1061
(Tex. Crim. App. 1937).

With these constitutional and statutory re-
quirements in mind, as well as the rule of construction,
we direct your specific attention to the following:

Section 22 makes it unlawful and, unless other-
wise declared, a misdemeanor for any person to do any
act forbidden or fail to perform any act required by
the act.

Section 158 prescribes the penalties for a
misdemeanor.

Section 54 reads as follows:

"RECKLESS DRIVING.--Every person who drives
any vehicle in willful or wanton disregard for
the safety of persons or property is guilty
of reckless driving."

Section 59 reads, in part, as follows:

"No vehicle shall be driven to the left
side of the center of the roadway in over-
taking and passing another vehicle proceeding
in the same direction unless such left side
is clearly visible, and is free of oncoming
traffic for a sufficient distance ahead to
permit such overtaking and passing to be com-
pletely made without interfering with the safe
operation of any vehicle approaching from the
opposite direction or any vehicle overtaken.
. . ." (Emphasis ours)

Section 60 (a) reads, in part, as follows:

"No vehicle shall at any time be driven
to the left side of the roadway under the
following conditions:

"1. When approaching the crest of a
grade . . ." (Emphasis ours)

Section 64(a) reads as follows:

"The driver of a motor vehicle shall not
follow another vehicle more closely than is
reasonable and prudent, having due regard for
the speed of such vehicles and the traffic
upon and the conditions of the highway."
(Emphasis ours)

Section 69 reads, in part, as follows:

"No driver of a vehicle shall turn so
as to proceed in the opposite direction upon
any curve or upon the approach to, or near
the crest of a grade . . ." (Emphasis ours)

Section 109 reads as follows:

"(a)    The driver of any motor vehicle
when traveling upon a down grade shall not
coast with the gears of such vehicle in neu-
tral.

"(b)    The driver of a commercial motor
vehicle when traveling upon a down grade shall
not coast with the clutch disengaged." (Em-
phasis ours)

Section 145(a) 6 reads as follows:

"One of the means of brake operation
shall consist of a mechanical connection from
the operating lever to the brake shoes or bands
and this brake shall be capable of holding
the vehicle, or combination of vehicles, sta-
tionary under any condition of loading on any
upgrade or downgrade upon which it is oper-
ated." (Emphasis ours)

Section 155 reads as follows:

"No person shall drive or move on any
highway any motor vehicle, trailer, semi-
trailer, or pole trailer, or any combination
thereof unless the equipment upon any and every
said vehicle is in good working order and ad-
justment as required in this act and said ve-
hicle is in such safe mechanical condition as
not to endanger the driver or other occupant
or any person upon the highway."

In Railroad Commission, et al, v. Fort Worth &
D. C. Ry. Co., et al, 161 S.W. (2d) 560 (Tex. Civ. App.
1940, writ refused), the court held invalid an order of
the Railroad Commission forbidding the use of double
header trains except on "steep grades" because it was
indefinite. The Court said:

"It is also invalid, we think, for another reason. Violation of it subjects the offender to a heavy penalty. Operation of such doubleheaders 'up steep grades' is excepted, and incurs no penalty. What constitutes a steep grade, necessary to be determined before such penalty can be assessed, is neither defined by the law, nor by any order of the Commission. Nor is it a generic term of such general well defined meaning, or of such special meaning common to railroad operation, as would afford the operators, a court, or jury a definite or reasonable standard whereby to determine what operations were exempted from the rule and what were not. The order must therefore, under the rule of strict construction, fall for want of definiteness. . . ."

In Ex Parte Meadows, supra, the Court of Criminal Appeals held a city ordinance making it "unlawful and an offense for any person to drive any vehicle on any street or alley in the limits of the City of Dallas in such manner as to indicate either a willful or wanton disregard for the safety of persons or property" invalid for want of definiteness and in violation of Article 6, V.P.C., and Section 10 of Article I of the Constitution.

In Hallman v. State, 18 S.W. (2d) 652 (Tex. Crim. App. 1929), the court held Article 1147, V.P.C., which declared an assault aggravated when committed by a person in robust health on one who is aged, to be invalid because it failed to fix the measure by which the meaning of the word "aged" could be determined. Analogous cases are Ex Parte Slaughter, 243 S.W. 478, 26 A.L.R. 891 (Tex. Crim. App. 1922); Missouri, K. & T. Ry. Co. v. State, 100 Tex. 424, 100 S.W. 766 (1907); and State v. Lantz, 90 W. Va. 738, 26 A. L. R. 894 (W. Va. Sup. Ct. 1922). See also, annotation in 26 A. L. R. 897.

In Ex Parte Slaughter, supra, the court tersely stated the rule as follows:

"Other applicable authorities are cited in the Griffin Case, in Missouri, K. & T. R. Co. v. State, 100 Tex. 424, 100 S.W. 767, Judge Brown, speaking for our supreme court, said: 'A penal statute, such as new before us, must be couched in such explicit terms that the

party upon whom it is to operate may, with reasonable certainty, ascertain what the statute requires to be done, and when it must be done; otherwise there would be no opportunity for a person charged with the duty, to protect himself by the performance of it according to the law. Sutherland, Stat. Constr. § 324; Potter's Dwarr. Stat. 246-251."

Based upon the above quoted authorities, we question the validity of the above mentioned sections from the standpoint of being definite. In the light of existing decisions on the subject it is our opinion that such sections should be made more definite and specific, and thereby eliminate the element of chance as to their constitutionality. By making such sections more definite and specific the Legislature will insure the constitutionality of same. This is specifically called to your attention for the reason that unless said sections are made more definite and specific, they may, under the decisions above cited, be held unconstitutional, and even though a holding of certain specific sections unconstitutional would not operate to strike down the act as a whole, it may result in destroying in no small degree the legislative policy intended under the act as a whole.

## SUMMARY

(1) Senate Bill No. 172, which is the same as House Bill No. 140, regulating traffic on highways, is as a whole constitutional. The doubt expressed as to the constitutionality of certain sections, together with the reason therefor, is specifically pointed out in the opinion.

(2) Section 52 of said bill requiring an accused against his consent to submit to blood, urine, and breath tests for the purpose of determining intoxication, and the introduction in evidence of the results of such

tests without the consent of the accused, violates Article I, Section 10 of the Constitution of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Charles E. Mathews*

Charles D. Mathews
Assistant

CDM/jt/lh

APPROVED : May 17, 1947

*Price Daniel*

ATTORNEY GENERAL